NANCY STEPHENS *vs.* EMMA B. COLLISON *et al.* Defendants in Error.—(JOSEPHUS W. MARTIN, Plaintiff in Error.)

*Opinion filed June 22, 1916—Rehearing denied October 11, 1916.*

1. TRUSTS—*the court may, under unusual circumstances, modify terms of trust in order to preserve it.* A court of equity has power to do whatever is necessary to preserve from destruction a trust created by will, and may, under unusual circumstances, modify the terms of the trust in order to preserve but not to defeat or destroy it; but such power will not be exercised except when it clearly appears to be necessary.

2. SAME—*a court of equity cannot destroy trust for the purpose of compromising suit.* Where the beneficiaries of a trust created by will are all adults, a court of equity has no power to authorize the executors, against the objection of one beneficiary, to accept a proposition to settle a suit to contest the will and set aside certain deeds made by the testator, where the effect of such settlement will be to abrogate and destroy the trust, even though all parties except the objector are willing to accept the proposed settlement and end the expensive and long continued litigation. (*Williams* v. *Williams,* 204 Ill. 44, distinguished.)

3. SAME—*a trust cannot be destroyed solely because it will be beneficial to parties in interest to do so.* A trust created by will cannot be destroyed by a court of chancery on the sole ground that in the judgment of the court such action will be beneficial to the parties in interest, all of whom are adults.

WRIT OF ERROR to the Circuit Court of Ford county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

OSCAR H. WYLIE, and DOBBINS & DOBBINS, for plaintiff in error.

SCHNEIDER & SCHNEIDER, HERRICK & HERRICK, A. L. PHILLIPS, and BARRY & MORRISSEY, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Josephus Martin died testate January 6, 1909, and left surviving him his widow, Hannah J. Martin, his children, Emma B. Collison, Mary E. Collison, Josephus W. Martin and Nancy Stephens, and his grandchildren, Effie Ireland,

Walter Karr, Edna Duncan and Charles Karr, only children of a deceased daughter, as his only heirs-at-law. Said Nancy Stephens filed a bill in chancery in the circuit court of Ford county to set aside a certain agreement and lease made between her and the executors of her father's will and other heirs of her father, and to contest the will of said Josephus Martin, which had been probated, and to set aside certain deeds made by said Josephus Martin to other children and to his grandchildren in his lifetime. A demurrer was sustained to the bill and a decree was entered dismissing the bill, which decree, on appeal to this court, was reversed and the cause remanded. (*Stephens* v. *Collison,* 249 Ill. 225.) The bill was amended in the lower court and a trial was had on the issues as to the validity of the contract but the validity of the will was not determined. The bill was again dismissed for want of equity, and that decree was reversed for errors in the admission of evidence and the cause was remanded. (*Stephens* v. *Collison,* 256 Ill. 238.) When the cause came up for trial in the lower court for the third time, Fred Collison and G. W. Karr, executors under said will and who were among the thirty parties defendant to the original and amended bill, filed a petition asking for authority of the circuit court to settle the suit according to a proposition made by Nancy Stephens, a defendant in error. Plaintiff in error, Josephus W. Martin, a defendant to the amended bill, filed certain objections to the petition. The court overruled the objections, entered a decree directing said executors to accept said proposition of settlement and ordered conveyances made in accordance with the proposed terms of settlement. To reverse that decree Josephus W. Martin prosecutes this writ of error.

The provisions of the will set forth in the bill and admitted by the answer and material to this controversy are the following:

"*Third*—It is my will and I hereby direct my executors hereinafter named to pay to my daughter Mrs. Nancy

Stephens the sum of $1000 on January 1 succeeding the date of my death, and the sum of $1000 on the first day of each succeeding January thereafter, for and during her natural lifetime, only. And to further secure and provide for the payment above mentioned in this clause, I give and bequeath to my executors named [my 227-acre farm,] to have and to hold the same in trust as herein provided, for and during the natural lifetime of my said daughter Nancy Stephens, and any rents, issues or profits which may accrue from the said land in excess of the $1000 to be paid annually to my daughter Nancy Stephens shall become a part of the remainder or residue of my estate.

"*Fifth*—I give, devise and bequeath to my great-granddaughter, Hazel Stephens, [my first 80-acre farm,] to have and to hold the same to my said great-grand-daughter, Hazel Stephens, from the date of the death of my daughter Mrs. Nancy Stephens, for and during her natural lifetime, only, and after her death to pass to my children and grandchildren in the following proportions, viz.: To my daughter Emma B. Collison one-fourth; to my daughter Mary Elizabeth Collison one-fourth; to my son, Josephus Martin, one-fourth; and to my grandchildren Effie Karr, Walter Karr, Edna Karr and Charles Karr one-fourth; and in the event of the death of any of my said children or grandchildren prior to my death, the legal heirs of the deceased child or grandchild, as provided by the rules of descent in the statute of the State of Illinois, shall take the share of the deceased.

"*Sixth*—It is my will and I hereby direct that my executors hereinafter named shall within two years after the death of my wife, Hannah J. Martin, sell at public or private sale, as in their judgment may seem best for the interests of my estate, [all my lots in Paxton,] and shall also sell within two years after my death, at public or private sale, as in their judgment may seem best for the interests of my estate, all the real estate of which I may die seized,

wherever situated, which has not hereinbefore been devised
or mentioned, [including my second 80-acre farm,] and
convert all the remainder and residue of my estate, both
real and personal, in money, all of which I will and direct
my executors to pay out as follows, viz.:  To my grand-
children Effie Karr, Walter Karr, Edna Karr and Charles
Karr the sum of $5500, share and share alike, and the bal-
ance remaining after the payment to them of the said sum
shall be divided among my children and grandchildren in
the following portions, viz.:  To Emma B. Collison one-
fourth; Mary Elizabeth Collison one-fourth; Josephus W.
Martin one-fourth; and Effie Karr, Walter Karr, Edna
Karr and Charles Karr one-fourth; and in the event of
the death of any of my said children or grandchildren prior
to my death, the legal heirs of such deceased child or grand-
child, as provided by the rules of descent in the statute of
the State of Illinois, shall take the share of the deceased."

The descriptions of the real estate in the said will are
lengthy, and the descriptions in the foregoing brackets are
used for the purpose of brevity and for ready comprehen-
sion of the tracts to be considered in this opinion.

The petition upon which the court entered its decree in
this case, after reciting the proceedings in the cause down
to that time, further stated that a large amount of costs
had already accrued, besides solicitors' fees, in this litiga-
tion.   It also stated that Emma B. Collison, Mary E. Colli-
son and the children of Dora B. Karr, grandchildren of the
testator, were willing to accept the propositions of Nancy
Stephens, and that Josephus W. Martin had been served
with a copy of the petition and notice that it would be pre-
sented to the court for its decision and the time and place
thereof, and prayed for an order and direction of the court
authorizing the executors to accept and carry out the terms
of the said proposed settlement.   Annexed to it and made
a part thereof was a copy of the offer of compromise of
Nancy Stephens, subject to the approval of the court, which

is, in substance, (1) that she would refund to the parties who paid it, the $4000 which was paid to her on the former compromise, with accrued interest thereon; (2) that she will retain the lease for the 227 acres which was executed by them under the former settlement of May 26, 1909, subject to any possible claim of Hannah J. Martin for dower, and that she is to have the accumulated rent thereon, after deducting taxes, repairs, receiver's commissions and fees and other charges against the land; (3) that she is to take a quit-claim deed from Emma B. Collison and her husband, and Mary E. Collison, a widow, and the children of Dora B. Karr, deceased, to said [first 80-acre farm,] subject to any possible claim of dower of Hannah J. Martin; (4) that she is to take the executors' deed to said [second 80-acre farm] at an agreed valuation of $10,-000, subject to a lease thereon expiring March 1, 1914, the rent notes for said lease to be assigned to her without recourse, and she is to take said land subject to claim of dower of said widow; (5) that she will pay all costs made by her, and the heirs and executors are to pay all costs made by them in the circuit court and all costs in the Supreme Court; (6) that she will dismiss all suits now pending, and it is to be understood that when these propositions are approved by the circuit court this shall be a final and complete compromise settlement of all litigation and causes of action growing out of the disposition by Josephus Martin of his real and personal estate and a full and complete release of all claims of Nancy Stephens to the property of Josephus Martin, deceased.

The substance of the objections filed by plaintiff in error is, that the propositions of settlement of Nancy Stephens are contrary and in opposition to the express terms of the said will of Josephus Martin, deceased, and that the court has no jurisdiction or power to alter the terms of the will or to compel him to settle upon the terms proposed; that the propositions of settlement proposed are manifestly to

his prejudice, and that a decree of the court either setting aside or sustaining the will would much better protect his interests than the acceptance of said propositions of settlement named in said petition.

The real question in this case for our decision is whether or not a court of equity has the power and the authority to entirely disregard the terms of a trust created by a will and to compel a party interested in the trust property to accept a compromise settlement of the trust estate against his will and against his interest where all the other interested parties are willing and desire the settlement. The court found and recites in the decree that it would be for the best interests of the estate of Josephus Martin and of all parties interested therein to accept the proposition of settlement submitted and thus to end the litigation, which has been long continued and expensive. It further found that Emma B. Collison, Mary E. Collison and the children of Dora B. Karr, deceased, together with plaintiff in error, are the only beneficiaries whose rights and interests will be reduced if the settlement is carried out, and that they are all willing, except plaintiff in error, that the settlement be made if the same is approved by the court. The defendants in error contend that, inasmuch as the subject matter of the controversy herein is a trust, the court of chancery had general jurisdiction of the subject matter, and all the parties except plaintiff in error having consented to said settlement, and plaintiff in error having been notified and filed his objections, the court had complete power and authority, under its findings aforesaid, to enter the decree. It is further insisted that as no certificate of evidence or bill of exceptions was filed in this case, the said facts found by the court are binding on plaintiff in error and are sufficient to sustain the decree.

It cannot be questioned that the effect of the compromise and approval thereof by the court, and its decree ordering the parties to execute the compromise settlement

upon the terms proposed, is to change the terms of the will of the testator, or, rather, to abrogate it altogether, and to vest title to the property devised by the will in trust, in the heirs and devisees according to the court's judgment of what is just and best for them. The only threatened calamity to the parties interested in the trust estate or to the property itself, so far as appears in this record, is that the validity of the will itself, and of certain deeds made by the testator just prior to the execution of the will, is being contested by the party proposing the settlement, and that the litigation has been long continued and expensive and is likely to be still continued. The parties are all adults, and if there is no valid will the court would be absolutely without any power or jurisdiction to compel a settlement of their property rights. Plaintiff in error has in no way caused the litigation and has appeared to be entirely indifferent as to its results. But if he had been a principal instigator of the suits and not disposed at all to settle them on any terms, we know of no rule of law or equity by which a court could compel him to accept terms of settlement proposed by the other parties to the suit, no matter how much more it might, in fact, be to his and to their interests to so settle than to pursue the litigation to any possible conclusion. If the will is valid, a court of chancery may define, but cannot alter or enlarge, the powers conferred upon the trustees by the will. The court has also the power to do whatever is necessary to be done to preserve the trust from destruction, and in the exercise of this power it may, under certain unusual circumstances, modify the terms of the trust to preserve it but not to defeat or destroy it. Courts are slow to exercise their power even to modify the terms of a trust, and will only do so when it clearly appears to be necessary. (*Rolfe, etc. Asylum* v. *Lefebre,* 69 N. H. 238; 45 Atl. Rep. 1087.) Where the trustees cannot under the existing circumstances, or any circumstances that can be anticipated, so manage the trust fund as to carry out the plain intentions of its creator,

and such circumstances were clearly not within his contemplation or the subject of any direction in the scheme of the trust as formulated and prescribed by him, a case of necessity is presented requiring the intervention of a court of equity, which may direct a change in the management of the trust fund if by such change the manifest intention of the creator of the trust may be carried into effect. (*Pennington* v. *Metropolitan Museum of Art,* 65 N. J. Eq. 11; 55 Atl. Rep. 468.) So in a case where the income of the trust property is insufficient to pay the taxes and the body of the estate is in danger of being lost entirely, the court will order the sale of all or a part of it in order to preserve it as far as possible. (*Voris* v. *Sloan,* 68 Ill. 588.) Under circumstances where the income of the trust property is insufficient to pay taxes, special assessments, etc., without modification of the terms of the trust, the court may and will modify its terms and the use of the property as specified by the creator of the trust and permit farm lands to be platted and sold as town lots. (*Johns* v. *Montgomery,* 265 Ill. 21.) In all such cases, however, the main object of the party creating the trust is best subserved by the court's action and the intent of the creator of the trust actually carried out. In the instant case not only is the title of the property in trust changed against the express terms of the will, but the trust itself is destroyed and the intent of the testator entirely defeated. There is no authority for such action of the court, so far as we can find.

Defendants in error rely on the case of *Williams* v. *Williams,* 204 Ill. 44, as authorizing the court to approve and authorize a compromise and settlement of a suit filed to contest a will. That suit was filed by an infant to contest a will, and the court merely exercised its power and its duty to authorize a compromise for the infant, using its best judgment and discretion to do the best thing for the minor's interests. It was not a compromise or settlement of a trust estate but the exercise of the court's judgment

as to whether a compromise or a contest was best and safest for the ward. The case of *Curtiss* v. *Brown,* 29 Ill. 201, is not in point and is no authority to sustain the decree in this case. In the instant case there are no facts presented, and the decree makes no findings of facts, which show a necessity for the court's interfering with the plan of the trust as created by the testator. It is true, no doubt, that the litigation has been long and expensive, and it may be absolutely true that all parties would save more money or property to themselves by this compromise than to continue the litigation to a final conclusion. Plaintiff in error, however, insists that he will be injured by the settlement. We do not think he will be injured to the extent he claims he will in his argument, but we have no means of knowing or determining the extent of loss or benefit to anyone by the settlement. There is a clear subversion of the trust from the plan originally made by the testator if Nancy Stephens be given the entire income from the 227-acre farm instead of $1000 per year, and the terms of the will will be materially changed in other respects if the compromise is carried out. This decision cannot rest upon the question whether or not any of the parties will be benefited or injured by the compromise. A trust created by a will cannot be altered or destroyed by a court of chancery on the sole ground that in the judgment of the court it will be beneficial to the parties in interest. (*Johns* v. *Johns,* 172 Ill. 472; *Johnson* v. *Buck,* 220 id. 226; *Lackland* v. *Walker,* 151 Mo. 210; 52 S. W. Rep. 414; *Morris* v. *Boyd,* 110 Ark. 468; 39 Am. & Eng. Ann. Cas. 1004, and notes in same volume, p. 999, under case of *Johns* v. *Montgomery.*) What was said in *Drake* v. *Crane,* 127 Mo. 85, (29 S. W. Rep. 990,) is applicable in the instant case, to-wit: "It may be conceded that a court of equity has no power to make a new will for a testator and that the extent of its power is to construe the will as presented to it, and further, that such court can no more authorize an act to be done which is in excess of the pow-

ers conferred by the will than can the trustees therein do such act." The will in the instant case gave no authority to the trustees or to the court to authorize the compromise in question, and the court had no power or authority to order such a settlement.

The decree of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*