FRANK N. WELLS, APPELLEE, v. CARL C. CARLSEN: JOHN A. REICHENBACH ET AL., APPELLANTS.

FILED APRIL 17, 1936. No. 29567.

774

*Perry, Van Pelt & Marti* and *Herbert W. Baird,* for appellants.

*Beghtol, Foe & Rankin, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

Goss, C. J.

Defendants appeal from a judgment on a verdict against them for $23,130.25 and costs, entered December 14, 1934.

Plaintiff brought the suit as assignee of 19 owners of bonds assigned to him for the purpose of collecting the bonds and of collecting damages from defendants.

The Lincoln Trust Company was organized as a trust company under the Nebraska statutes. Its affairs were controlled by a board of directors, an executive committee, a loan committee, and various officers, including a president, vice-president and trust officer. Defendants held these offices: Carl C. Carlsen was president, director and a member of the executive and loan committees; John A. Reichenbach was vice-president, director and a member of both committees; Paul H. Holm was a director and a member of both committees; and William R. Mellor was trust officer, a director and a member of both committees.

The Lincoln Safe Deposit Company was also a Nebraska corporation. It had among its powers the right to buy, own, manage or encumber real estate. The evidence shows it was used as a holding company for the Lincoln Trust Company and was managed and owned by the officers, directors and stockholders of that company. Both of these companies were adjudicated bankrupts on July 9, 1932.

At all dates concerned with this suit, A. D. Eigenbroadt was the owner of the fee title of lot 11, block 37, Lincoln, which is the real estate upon which the mortgages involved here were made. March 30, 1932, he leased it for 99 years to Central Tire and Repair Company by a written lease. The lessee was to pay $50 a month to start and these payments were graduated upwards until they reached $200 a month. The tenant agreed also to pay all rates and taxes. Failure to pay promptly called for a forfeiture. By assignment, Milburn C. Shurtleff became the lessee and was such when, on April 1, 1926, Shurtleff and wife made a mortgage, due in 10 years, on the real estate, not described as a leasehold but as if they owned the fee, in favor of Lincoln Safe Deposit Company for $20,000, securing 45 notes or bonds.

At the time this loan was made the Lincoln Trust Company was advised by opinions of the attorney who examined the abstract that the borrower had only a 99-year lease and that Eigenbroadt owned the fee title. Carlsen and Reichenbach signed the approval sheet approving the loan and on that sheet was a call for Shurtleff's assignment of the 99-year lease and a call for an assignment of a $20,000 life insurance policy. The assignment of the life insurance policy was taken as additional security, but it was not mentioned in the mortgage nor in the bonds. A commission of $600 was charged and retained for making this loan. The bonds were sold to the public—in many instances to the assignors of plaintiff.

There was evidence that, at the time Shurtleff acquired title to the leasehold, his sister-in-law, Tillie C. McDonald, had an undisclosed 15 per cent. interest in it, John Ledwith had an undisclosed 42½ per cent. interest and Shurtleff had a like interest. In 1926 they began the erection of a two-story, practically fireproof ramp garage on the lot. When the garage was completed it was leased to Mr. Pinney for what became and still is known as "Pinney's Garage." At first this tenant paid $5,500 a year on a five-year lease, but at the time of the trial he was paying $150 a month. Some time after 1926 Shurtleff dropped out and John Ledwith and Tillie C. McDonald each owned a half interest in the 99-year lease, though only McDonald evidently appeared of record as owner.

By May 1, 1929, the loan was defaulted as to principal in a considerable sum. It had been in default almost from the beginning. Taxes also were in default. The bondholders had never been notified by the trust company of these defaults. Instead, the Lincoln Safe Deposit Company paid from its own funds all interest coupons as they became due. As of May 1, 1929, defendants all signed an approval sheet, approving a "new loan" of $22,500 on this same real estate, but in reality on the 99-year lease, which was now standing in the name of Tillie C. McDonald, and she executed new bonds in that sum. Mr. Ledwith testified he made a written

guaranty of the loan. This guaranty was surrendered to him without notice to the bondholders. It was not disclosed to them that Mr. Ledwith ever had an interest in the leasehold. The attorneys examining the abstract for the trust company furnished a written opinion to the trust company that Eigenbroadt was the record owner of the fee and T. C. McDonald the record owner of the 99-year lease. The mortgage was recorded, the former mortgage was released, a commission of $400 was paid to the trust company, its advancements were repaid, and $3,754.91 was paid to Tillie C. McDonald. Some time later the holders of Shurtleff's bonds were advised that a new loan had been made and that their old ones could be exchanged for new, which in most instances was done.

The bonds secured by the new mortgage were in default almost from the first, and, up to the payments maturing November 6, 1932, interest and principal due the bondholders were paid by the trust company without any notice to the bondholders that the funds were not paid by the maker and with no notice that general and special taxes were not being paid by the owner of the leasehold, as required by the terms of the lease. The property had been sold for taxes for 1930 and 1931 and a tax sale certificate had been issued. In the meantime the companies had been adjudicated bankrupt and the First Trust Company of Lincoln had been appointed as successor trustee for all the trusts of the Lincoln Trust Company.

On April 22, 1933, the First Trust Company, after advising with the bondholders and informing them of the true situation and receiving their recommendations, commenced foreclosure of the mortgage on the 99-year leasehold interest. It went to decree and sale to plaintiff, but before confirmation it was learned that Mr. Eigenbroadt had given all necessary parties notice of the termination of the 99-year lease in accordance with its terms. Thereupon the First Trust Company called the bondholders together and informed them of the defaults necessary to be cleared up before the 99-year lease would be available to them, if they or

their trustee secured title to it. It was disclosed that the taxes totaled about $3,200. The trust company was instructed to have its bid canceled, which was done, and the motion to confirm the sale was withdrawn by order of court.

February 3, 1934, Mr. Eigenbroadt commenced his action in the district court for Lancaster county against all parties having an interest therein, to quiet his title and to cancel the 99-year lease. On March 16, 1934, a decree was entered, canceling the lease and quieting the title in Eigenbroadt.

The instant suit was commenced February 24, 1934, by the trustee to recover against defendants because of their alleged fraudulent and negligent conduct in allowing securities to be sold to bondholders of the company based upon a mortgage upon a leasehold estate, but purporting to be a mortgage upon the fee, contrary to their duty to the customers of the company.

The pleadings occupy more than 100 pages of the transcript. The facts we have stated were in evidence and respond to the allegations of the petition. The chief issue of law raised was as to whether defendants were legally responsible for any fraud operating on the bondholders by reason of the mortgage being upon a leasehold interest rather than upon the fee. On their part it was claimed that they merely approved the loan on the Pinney Garage property, that they did not know that the mortgage was actually made only upon the leasehold interest, that they were not responsible for clerical acts which followed their approval, nor for any fraud upon the bondholders or negligence in keeping them advised of the status of the title and of other things that affected the securities for which the trust company was a trustee.

There are 23 assignments of error. The first one argued is that it is reversible error to permit both negligence and fraud to be alleged in the same cause of action. We think defendants overlook the true analysis of the petition. Plaintiff alleges that defendants entered upon a scheme of dealing with the trusteeship so as to cause the trustee to commit breaches of trust for the benefit of the trustee and defend-

ants. It is further claimed that the breaches of trust were both fraudulent and negligent on the part of the trustee. For example: It was a fraud to breach the trust by failing to advise the bondholders that the trust company received a commission of $400 for making the second mortgage that took up the first one before it was due in order to pay the trustee its advancements it had concealed from the bondholders and to pay Tillie C. McDonald the excess money derived from an enlarged loan; it was a fraud for the trust company to sell bonds purporting to be first mortgage bonds which the trust company knew were not such. But it might be either fraud or negligence on the part of the trustee to fail to collect the Shurtleff mortgage or later to fail to require Tillie C. McDonald to pay the taxes and thus keep the only security behind the fraudulent notes in good standing.

The same claim about joinder of fraud and negligence was made in *Masonic Bldg. Corporation v. Carlsen,* 128 Neb. 108, 258 N. W. 44, and the court quoted from 3 Pomeroy, Equity Jurisprudence (4th ed.) sec. 1079, as follows: "It is well settled that every violation by a trustee of a duty which equity lays upon him, whether wilful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust. The term therefore includes every omission or commission which violates in any manner either of the three great obligations already described—of carrying out the trust according to its terms, of care and diligence in protecting and investing the trust property, and of using perfect good faith."

In the case just cited the court further said, on page 132: "The defense offered by defendants to the foregoing may be summarized as follows: That an officer of a corporation is not liable for an error of judgment or for a failure to perform the duty which the corporation owes third persons. This principle of law is not disputed by plaintiff. In view of the instructions given by the trial court, in which it instructed as to the law relative to the liability of defendants, we believe that defendants were held not solely because of the Lincoln Trust Company's duty to plaintiff, but because

they were the parties who caused the trust company to make the breach. The record presents a case for the jury to decide as between the evidence of plaintiff and the claims of defendants."

In the syllabus it was said:

"The violation by a trustee of a duty laid upon it by law, whether wilful and fraudulent, or done through negligence or arising through mere oversight or forgetfulness, is a breach of trust. * * *

"All persons who knowingly participate or aid in committing a breach of trust are responsible for the wrong, and may be compelled to replace the fund which they have been instrumental in diverting. Whether or not the defendants knowingly participated or aided in committing a breach of trust is a question of fact for the jury to determine under proper instructions and the evidence."

See, also, *First Trust Co. v. Carlsen*, 129 Neb. 118, 261 N. W. 333; *Walker v. Howell*, 209 Ia. 823, 226 N. W. 85; *Prudential Trust Co. v. McCarter*, 271 Mass. 132, 171 N. E. 42.

We think it was the duty of the trial court, as was done, to submit to the jury for decision as to whether there were breaches of the trust, whether defendants participated and aided in the breaches, and whether plaintiff was damaged.

The second point argued as error is that nineteen causes of action were joined, each being based on the claim of a bondholder assigned to plaintiff, and that as to six of these causes of action the proof has failed as to any misrepresentation or failure to disclose any fact or as to reliance upon any representation. The evidence as to the breach of trust was not confined to any one cause of action. It applied to all. The scheme alleged and proved against defendants was not that they conspired to defraud any particular person, but that their plan was to defraud a class of persons, to wit, those who should become the owners of the fraudulent bonds fabricated under defendants' orders. For the evidence of defendants themselves shows that their bare approval of the loan was such that clerks would thereby be directed to draw up real estate mortgage bonds. The inference from the

evidence is that those bonds would be secured by a mortgage as if on the fee, when the slightest investigation by these defendant officers would show to them that the only title the borrowers had was a leasehold title. It is true that all the assignors of the bonds were not called as witnesses, but it is not necessary that a beneficiary himself be a witness to prove the breach of trust. It can be, as it was here, proved in other ways. When the McDonald mortgage and bonds supplanted the Shurtleff loan, letters were written by the trust company on September 27, 1929, to the bondholders, telling them the company was calling the Shurtleff bonds for payment October 1st, and was pleased to advise that they could supply the holders with an "equal amount of the new loan" on the same property, "occupied by Pinney's Garage and in our opinion is an exceedingly desirable loan," etc. The evidence shows that these bonds were in default almost from the start and that the taxes were not paid, but that these things were concealed from the bondholders. This applied to all the causes of action.

In *First Trust Co. v. Carlsen*, 129 Neb. 118, 261 N. W. 333, it was said:

"Where it appears that a trustee has practiced concealment, evasion or misrepresentation, thereby depriving the *cestui que trust* of material information relative to the subject-matter of the trust to his injury, the trustee, together with the persons participating in the wrong, may be required to respond in damages. * * *

" 'The degree of participation in the commission of an actionable tort does not affect the extent of liability, and all persons who instigate, promote, encourage, advise, countenance, cooperate in, aid, or abet the commission of an actionable wrong by another are liable as principals to the party injured to the same extent and in the same manner as if they had performed the wrongful act themselves.' *Dickinson v. Lawson*, 125 Neb. 646. * * *

"The officers of a corporation are responsible for the fraudulent acts of the corporation in which they participate, and in a suit for fraud, if fraud is proved, the law

will look through the corporation to the officers who acted in the matter, and the officers who acted in the premises are proper parties defendant."

The trial court took the precaution to instruct the jury that, if they found plaintiff had sustained damages because of "fraudulent and deceitful breach of trust in not disclosing the true condition of the bonds," then the entire damages suffered by plaintiff could be recovered; but, if the jury did not find for plaintiff on account of such breach of trust but merely on the grounds of the representations as to the character of the bonds and their security, then they should proceed to find from the evidence which, if any, of the bondholders have been proved to have relied and acted upon the representations and to award plaintiff only such damages as were sustained on those particular bonds. It is clear from the evidence and the verdict that the jury found there was a breach of the trust, and that all bondholders were damaged, irrespective of whether specific fraudulent representations were made to all of them. We think this instruction and this discussion effectually answers the particular charge of error on this point.

It is claimed that the attempt of First Trust Company to foreclose on the mortgage of the 99-year lease bars this action. When the bondholders learned that the trust had been breached and their trustee had been adjudicated bankrupt, they directed the successor trustee to follow such trust *res* as was left. It was followed until it vanished when the owner of the fee asserted his rights. Having demonstrated that the security fraudulently given them was worthless, they followed their perfectly legal remedy of pursuing the officers of the trustee whom they alleged to be responsible for the fraudulent breach of trust. Perhaps both remedies might have been pursued at the same time if the parties saw fit. We do not have to decide that here. But it is fundamental that they still had the right to sue for damages at law when their quest for satisfaction or partial satisfaction of their debt ended in the destruction of the *res*. See *McWilliams v. Excelsior Coal Co.*, 208 Fed. 884, cited with

approval in *Masonic Bldg. Corporation v. Carlsen,* 128 Neb. 108, 135, 258 N. W. 44. See, also, *Oliver v. Piatt,* 3 How. (U. S.) \*333; Perry, Trusts (2d ed.) p. 474; *Prondzinski v. Garbutt,* 10 N. Dak. 300, 86 N. W. 969. In *Federal Trust Co. v. Ireland,* 124 Neb. 369, 246 N. W. 707, it was said:

"Plaintiff argues that Baxter is entitled to pursue but one of two remedies, either to pursue the trust property, or an action in damages, but may not resort to both at the same time, and insists that, in seeking a judgment against plaintiff for the amount of the Johnson lien, he is seeking to pursue both remedies.

"The contention is unsound. Baxter has sought to recover the land from his recreant trustee in the condition that it was at the time the trustee acquired it, and, in asking for the cancelation of the mortgage, or, in lieu thereof, a judgment for an amount sufficient to cancel all of plaintiff's mortgages, he is seeking only to recover the trust property as it was at the time acquired by the trustee."

A beneficiary of a trust is not barred from suing at law for damages for a breach of the trust because he has first undertaken to follow his remedy against the trust *res* which has vanished.

Defendants' next assignment of error is that, having commenced a foreclosure action and prosecuted it to judgment, the bonds were merged in the decree, and the bondholders are estopped from prosecuting this action. They cite cases to the effect that, when a holder of promissory notes secured by a mortgage commenced foreclosure, he cannot also sue at law for a judgment on the notes. But there is no attempt here to recover on the notes as such. This suit is for fraud in connection with the notes, but not any claim on the notes themselves. Such a claim on the notes would be against Tillie C. McDonald, the maker of the notes. The evidence shows that she became insolvent years ago. The suit against defendants is not on the notes, but because of their conduct in aiding or causing the trustee to breach its trust to the bondholders, for which they are personally responsible. The suit was properly brought to enforce a right plaintiff had.

Defendants assert that the assignors did not have a cause of action against defendants or that the assignments to plaintiff did not confer a right to sue any one but the mortgagor. Each assignment from a bondholder described and assigned the bond to plaintiff for collection, together with "all claims, choses in action and rights which I have growing out of the issuance of said bond and because of said bond." It is perfectly clear from a reading of these assignments that the bondholders intended to vest Wells, the assignee, who is plaintiff here, with all their rights either to collect of the maker, or through the property mortgaged, or of any one responsible for any claim or right growing out of the issuance of the bonds or because of the bonds. The court submitted to the jury as a question of fact whether or not the assignments had been executed by the bondholders with the intention of assigning this cause of action to plaintiff.

Defendants claim that, as to six of the assignments, there was no competent proof of signature. The evidence contains competent proof of the signature of every one of the six assignors.

It is also claimed that error was committed in receiving evidence as to the solvency of Tillie C. McDonald at the time of the trial. She testified that she thought herself a rich woman at the time she executed the mortgage and bonds. Testimony was admitted and received, over objections of defendant, that she was insolvent at the time of the trial. If she had still been solvent, it would have been the duty of the bondholders to mitigate their losses by collecting from her. If she had paid, there would have been no loss to plaintiff which could have been collected from defendants. There is no merit to this claim of defendants.

The next and last claim of error presented in the brief is that 15 of the great number of instructions requested were refused by the trial court. The instructions are not set out in the brief and the argument is very brief on this point. We have examined the instructions given by the court and the instructions refused and the refusals com-

plained of, and find that there was no prejudicial error in refusing instructions. The giving of various instructions was assigned as error, but these were not argued in the brief. The instructions given by the court were very complete and covered every phase of the case. They evidently adopted the principles set forth in the following cases in this court, in all but two of which the acts of the same companies were under consideration: *Masonic Bldg. Corporation v. Carlsen,* 128 Neb. 108, 258 N. W. 44; *First Trust Co. v. Carlsen,* 129 Neb. 118, 261 N. W. 333; *Carlsen v. State,* 127 Neb. 11, 254 N. W. 744; *Paul v. Cameron,* 127 Neb. 510, 256 N. W. 11; and *Ashby v. Peters,* 128 Neb. 338, 258 N. W. 639.

Defendants seek to avoid liability on the ground that their duty ended when they approved mortgage loans upon the real estate and that they had no knowledge of any fraud or of any further facts after their approval. The court correctly instructed the jury that, if defendants knew of fraudulent representations or had such knowledge of facts in connection with such matters as would have led them to full knowledge of all the facts, had they acted in exercise of their duty as such directors or committee members, then they would become personally liable for the breach of trust. The jury found from a preponderance of the evidence, and the evidence was sufficient to support the verdict, that defendants were liable.

We find no prejudicial error in the record. The judgment is

AFFIRMED.