Chester M. HIMEL et al.,
Plaintiffs-Appellants,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant-Appellee.

No. 78–1593.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1979.

Decided March 14, 1979.

Rehearing and Rehearing En Banc Denied April 27, 1979.

Richard F. Watt, Chicago, Ill., for plaintiffs-appellants.

James E. Honkisz, Mayer, Brown & Platt, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, MAR-KEY, Chief Judge,* and BAUER, Circuit Judge.

MARKEY, Chief Judge.

The decision of the District Court for the Northern District of Illinois, 430 F.Supp. 651 (N.D.Ill.1977), granting partial summary judgment in this trust management case, on the basis of res judicata, is *reversed*.

### Background

In 1925, Antonio Mora established a testamentary trust, covering substantially all his estate, with this investment clause:

It is my desire that my Trustee keep my trust estate so invested as to produce the highest possible income consistent with reasonable security, and to that end, I direct that my Trustee invest the funds of said trust estate, as they are paid in, from time to time, in notes secured by mortgages or trust deeds which shall be first liens on improved property in Cook County, or on improved farms within what is commonly called the "Corn Belt", that is, the States of Illinois and Iowa and Southern Minnesota, or in high grand [*sic*] bonds. It is my desire that insofar as is reasonably possible, all investment of said trust funds be made in securities bearing at least five percent (5%) interest.

Antonio died in 1928. In 1929, defendant Continental Illinois National Bank and Trust Co. (Bank), assumed the trusteeship.

On Antonio's death, the trust income was divided between his daughters, Angela and Mary. On Angela's death in 1941, Mary received all the income, and on Mary's death in 1968, her sons—Robert, Chester, and William—each received one-fourth of the trust corpus, and her daughter Mora received the income from the remaining one-fourth.

In 1928, Antonio's estate was valued at approximately $400,000. By 1961, its value had decreased to $335,000. In February of 1961, Mary, as income beneficiary, and her children, as contingent remaindermen, filed a petition in the Superior Court of Cook County, Illinois, seeking modification of the investment clause.[1] Robert Himel and a Bank vice president testified, and the court found, that the Bank was limited in its investments by the restrictions in the quoted investment clause, that Antonio "did not foresee and could not have foreseen the investment conditions of the present time," and that continued adherence to the terms of the trust would frustrate "the testator's primary intention, that the trust produce the highest possible income with reasonable security . . . ." Accordingly, the court authorized the Bank to invest the trust corpus in accordance with the "Prudent Man Act," Ill.Rev.Stat. ch. 148, § 32, as requested in the petition.

Mary, as the only income beneficiary, received regular financial reports from the Bank. After Mary's death in 1968, Chester and Mora, aware of the trust's poor performance, obtained information from the Bank which, they allege, led them to conclude that the Bank had mismanaged the trust estate and breached its fiduciary duty to all the beneficiaries. In June 1972, Chester,[2] William, and Mora (plaintiffs) brought this suit against the Bank, alleging it had:

(1) charged to the trust estate excessive and otherwise unwarranted fees as trustee;

(2) failed to adhere to the will's directions concerning the investment of the trust estate, and retained and purchased securities and other investments as trustee which were prohibited by the will;

(3) retained and purchased securities and other investments as trustee which were prohibited by law generally, and otherwise failed to adhere to the law governing the investment of trust funds;

---

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. Although the Bank was named as defendant, no relief against the Bank was sought.

2. Chester brought suit in his own behalf, as administrator of Mary's estate, and as Robert's assignee.

(4) engaged in the purchase, retention, or sale of securities and other investments as trustee in circumstances constituting unlawful self-dealing and conflicts of interest on the Bank's part;

(5) purchased, retained, or sold securities and other investments as trustee which it knew or in the exercise of proper care would have known (a) should not have been purchased or retained because of their absolute or relatively low quality or because of the nature of the risks attached to them, or (b) should not have been sold because of their absolute or relatively high quality;

(6) generally managed the affairs of the trust in a careless, negligent and incompetent manner, e. g., by paying thousands of dollars in excessive federal income tax;

(7) generally managed the affairs of the trust in a manner so as to benefit the Bank rather than the beneficiaries;

(8) refused to make available to plaintiffs documents pertaining to the trust.

Plaintiffs seek an accounting, compensatory and punitive damages, reimbursement of fees and costs, and removal of the Bank as trustee of the remaining portion of the trust.

The Bank moved for partial summary judgment pursuant to Fed.R.Civ.P. 56.[3] In its memorandum opinion granting the Bank's motion, the district court stated, 430 F.Supp. at 654:

> In the present action, plaintiff's complaint arises out of the various investment decisions made by Continental in its administration of the Mora trust, including those investment decisions made prior to 1961. However, the prior 1961 litigation between these parties also arose out of Continental's pre-1961 investment decisions. Under Illinois law, in an action for reformation of a restrictive investment provision in a trust, the trust beneficiaries must allege and establish that

the investment decisions made by the trustee, being limited in scope by the terms of the trust, have caused the decline in the value of the trust corpus and that such a decline in value would continue unless the trustee was allowed to invest more liberally. *See Stephens v. Collison,* 274 Ill. 389, 113 N.E. 691 (1916); *Curtiss v. Brown,* 29 Ill. 201 (1862); G. Bogert, The Law of Trusts & Trustees § 562, at 143–45 (1960); J. Pomeroy, Equity Jurisprudence § 1062, at 170–76 (1941). *See also Northern Trust Co. v. Thompson,* 336 Ill. 137, 157, 168 N.E. 116, 124 (1929); *Thorne v. Continental Nat'l Bank & Trust Co.,* 18 Ill.App.2d 163, 173–74, 151 N.E.2d 398, 403–04 (1958). Thus, the gravamen of plaintiffs' complaint in 1961 was that Continental's investments, restricted by the terms of the trust, were causing the trust injury, the same factual situation giving rise to the present action. Plaintiffs, in 1961, sought reformation as a remedy and this decision bars plaintiffs under res judicata principles from relitigating in this suit the cause of loss to plaintiffs prior to 1961 from Continental's investment decisions.

The district court also stated that consideration of the doctrine of judicial estoppel, raised by the Bank, was unnecessary, although the Bank's position (that judicial estoppel was a bar) was supported by *Chicago, S.S. & S.B.R.R. v. Fleming,* 109 F.2d 419 (7th Cir. 1940). 430 F.Supp. at 655 n.1.

Plaintiffs moved for reconsideration, submitting affidavits in support of their assertion that there were unresolved issues of material fact. The district court denied the motion, citing the absence of any allegations or evidence that the Bank "actively concealed information from the trust beneficiaries."

*Issues*

The dispositive issue is whether the Bank is entitled to judgment as a matter of law on its motion, i. e., whether: (1) res judicata

---

**3.** Rule 56 reads in pertinent part: "(c) . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

applies to events prior to 1961, or (2) judicial estoppel applies to events prior to 1961.

## OPINION

### 1. Res judicata does not apply to events prior to 1961

■ As the district court correctly stated, "the . . . primary test for determining if two suits are premised on the same cause of action is whether both suits arise out of the same basic factual situation." 430 F.Supp. at 653. *Lambert v. Conrad*, 536 F.2d 1183, 1186 (7th Cir. 1976). Because both suits were motivated by the relatively poor investment results, or performance, of the trust, the district court concluded that they arose out of the same factual situation. 430 F.Supp. at 654. That analysis, however, confuses cause with effect. Though both suits were directed at an effect, i. e., poor performance of the trust, they arise out of independent factual situations alleged to be the *cause* of that effect. Thus the two suits are premised on different causes of action arising out of different events occurring prior to 1961.

■ The first suit was founded on the investment clause as the cause, under prevailing economic conditions, of the trust's failure to produce the highest possible income with reasonable security. Under Illinois case law, a court will direct revision in the instructions of the settlor only where the trustee, under existing or anticipated circumstances, could not manage the trust so as to carry out the plain intentions of the settlor. *Stephens v. Collison*, 274 Ill. at 395, 113 N.E. at 694. A trustee's misconduct in managing the trust is not involved in a determination of whether the settlor's instructions should be modified. Therefore, if Mary and her children had been aware of the Bank's alleged misconduct and had proved it, that fact would not have affected the court's grant or denial of the specific relief requested in the earlier suit.

■ The present suit is founded on alleged management misconduct of the Bank, i. e., breach of its fiduciary duty.[4] Unlike the situation in the earlier suit, the presence of changed economic conditions would neither support plaintiffs' request for relief,[5] nor provide the Bank with a defense[6] in the present suit. Thus, the facts (the investment clause restrictions) giving rise to the first suit are not the same as the facts (alleged misconduct) giving rise to the present suit.

*Hennepin Paper Co. v. Fort Wayne Corrugated Paper Co.*, 153 F.2d 822 (7th Cir. 1946) relied on by both the district court and the Bank, is inapposite. In *Hennepin*,

---

**4.** Though plaintiffs alleged a failure to adhere to the will's investment directions, breach of fiduciary duty includes "every omission or commission [whether willful and fraudulent, or negligent] which violates in any manner the three major obligations [of a trustee] of carrying out a trust according to its terms, of care and diligence in protecting and investing the trust property and of using perfect good faith." *Chicago Title & Trust Co. v. Chief Wash Co.*, 368 Ill. 146, 154, 13 N.E.2d 153, 157 (1938) (citation omitted). Because failure to adhere to the terms of the trust is only one element of breach of fiduciary duty, the judge's finding in the first suit that the Bank had "properly limited investments" in accord with the trust terms would not be dispositive of the claims in the second suit.

**5.** An accounting will be granted where the actions of the trustee constitutes fraud, e. g., where the trustee engages in self-dealing. *Lonsdale v. Speyer*, 249 App.Div. 133, 140, 291 N.Y.S. 495, 504 (1936).

A trustee will be removed, "in a proper case, for a breach of trust, misconduct, or disregard of his fiduciary duties." *Chicago Title, supra* note 4, 368 Ill. at 154, 13 N.E.2d at 157.

Damages will be awarded "[w]here it appears that a trustee has practiced concealment, evasion or misrepresentation, thereby depriving the cestui que trust of material information relative to the subject-matter of the trust to his injury . . . ." *Wells v. Carlsen*, 130 Neb. 773, 780, 266 N.W. 618, 622 (1936).

**6.** The defenses to breach of fiduciary duty are acquiescence, confirmation, and ratification of the breach by the beneficiary. *In re Hartzell's Will*, 43 Ill.App.2d 118, 134, 192 N.E.2d 697, 706 (1963). Unfavorable economic conditions do not excuse imprudent investments by a trustee. *Merchants Nat. Bank of Aurora v. Frazier*, 329 Ill.App. 191, 204, 67 N.E.2d 611, 619 (1946). A modification of the settlor's instructions, as occurred here, is not a defense against, or an immunization of the trustee from a claim for breach of fiduciary duty.

plaintiff alleged in a first suit that defendant's written contract commitment to buy 600 tons of corrugating material per month was changed to 800 tons by an oral modification, and that defendant breached the contract as modified. Paragraph 5 of the complaint, alleging the oral modification, was stricken on motion of defendant. The jury nonetheless determined "whether or not there was an oral change in the written contract rather than whether there was an [independent] oral contract," *id.* at 826, and returned a verdict against plaintiff. In the second suit, plaintiff sought reformation of the written contract, alleging in paragraph 6 of the complaint that defendant accepted a proposal prior to execution of the written contract. Paragraph 6 alleged substantially the same facts as the stricken paragraph 5 of the first complaint. This court held that, as plaintiff knew at the time of the first suit the same facts on which it relied in the second, it was able procedurally to seek reformation in the first suit and should have done so. *Id.* at 825. In the present suit, the fact allegations on which the cause of action rests are not the same as those of the first suit, and plaintiffs contended in their affidavits that they did not know in 1961 of the Bank's alleged misconduct.

■■ The district court's determination that "plaintiffs have suggested no substantial reason and have presented no evidence for their failure [to allege the present claims] . . .," 430 F.Supp. at 654 (citing *Brachett v. Universal Life Insurance Co.*, 519 F.2d 1072, 1073 (5th Cir. 1975)), was in error. It is true that a claim may be barred where with diligence it could have been litigated in the first suit. *See Brachett, id.* at 1073. The record would appear to raise at least a material fact question, however, respecting the knowledge and diligence of plaintiffs regarding the alleged facts on which the present claims rest.

The Bank alleged in its pleadings that it supplied regular reports to Mora. Mora denied that allegation in her affidavit. On appeal, the Bank relies on periodic financial reports made not to Mora but to Mary. However, plaintiffs allege in their affidavits that Mary did not ordinarily provide her children with information supplied by the Bank, or with copies of the principal and income statements, nor did she discuss the trust with them. Further, there is no evidence that the Bank's alleged misconduct was discoverable from its reports to Mary, nor is there a basis for imputing Mary's knowledge (whatever it may have been) to plaintiffs. In their individual capacities, plaintiffs were remaindermen under Antonio's will; they did not take through Mary, and are not her successors in interest. Chester did not become administrator of Mary's estate, and thus her successor in interest, until Mary's death, which occurred after the 1961 suit for modification of the investment clause. On the present record, it cannot be said that plaintiffs knew or should have known in 1961 of the alleged earlier misconduct on which the involved portion of the present cause of action rests. *See Merchants Nat. Bank*, 329 Ill.App. at 204, 67 N.E.2d at 619–20.

Nor is it required, in forestalling summary judgment on the basis of res judicata, that plaintiffs allege or evidence active concealment by the Bank. The existence or nonexistence of active concealment from the pre-1961 beneficiary (Mary) may have an effect upon the court's eventual determination of whether the present plaintiffs knew, or with diligence could or should have known, of the alleged misconduct of the Bank. At this preliminary stage, and in the state of the present record, a grant of summary judgment for failure to allege or submit evidence of active concealment by the Bank was premature.

2. *Judicial estoppel does not apply to events prior to 1961*

■■ The doctrine of judicial estoppel "precludes a party from advocating a position inconsistent with one previously taken with respect to the same facts in an earlier litigation . . ." *In re Yarn Processing Patent Validity Litigation*, 498 F.2d 271, 279 (5th Cir. 1974), *cert. denied*, 419 U.S.

1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974).[7] The doctrine is not applicable here because, as discussed above, the facts here are not "the same facts" in the first suit. Nor is plaintiffs' position here inconsistent with the position previously taken. The poor performance of the trust prior to 1961 could have been caused by the investment clause-plus-economic conditions and by the Bank's breach of fiduciary duty. Existence of one cause would not preclude relief based on another cause unknown in 1961.

For the reasons stated, the judgment of the district court is *reversed*.

REVERSED.

BAUER, Circuit Judge, dissenting.

I respectfully dissent. The trial court properly found, in my opinion, that the same basic factual question raised in the instant suit was raised in the state court suit. The poor performance of the trustee which allegedly caused the poor investment results was in issue in that suit. Whatever the predicate for the plaintiffs' belief in the trustee's poor performance, only a single cause of *action* existed and *all* facets of performance *could* and *should* have been presented and adjudicated. The state case was totally dispositive of the trustee's performance to the date of the judgment. I would affirm the trial court's determination that the present claims of misconduct prior to the 1961 state court decision are barred by *res judicata*.

---

**7.** The parties have not cited, and we have been unable to find, a case in which this court has *expressly* referred to "judicial estoppel." In *Fleming*, 109 F.2d 419, the sole authority cited by the district court, the court dealt only with an inconsistency. Plaintiff sought to enjoin proceedings under the Railway Labor Act, 45 U.S.C. § 151 et seq., alleging it was not a railroad under the Act. Plaintiff had previous- ly undergone reorganization under § 77(m) of the Bankruptcy Act, 11 U.S.C. § 205(m), alleg- ing that it was a "railroad corporation" as used in § 77(m). This court stated: "Having brought itself within the definition of railroad for that purpose [reorganization under § 77(m)], we think [plaintiff] cannot now deny similar classification for purposes of the Rail- way Labor Act." 109 F.2d at 420.