Roberta Alexander TYSON, a/k/a
Marjorie Harriett Tyson,
Plaintiff,

v.

Fred W. PATHMAN, Sr.; McSweyn
Shattuck; and Kathryn McSweyn
Smallwood, Defendants.

No. WC86–145–NB–D.

United States District Court,
N.D. Mississippi, W.D.

June 2, 1988.

T.H. Freeland, III, Oxford, Miss., for plaintiff.

Fred E. Briner, Benton, Ark., Orma R. Smith, Corinth, Miss., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court on the defendants' motion for summary judgment on the ground that this action is barred under the doctrines of res judicata and collateral estoppel. The court has waived the page limitation for briefing and, after due consideration of the parties' memoranda and exhibits, is ready to rule on the motion for summary judgment on the plaintiff's claim.

### I. Introduction

The plaintiff brought this action against the executors of Ruth Tyson's estate, Fred Pathman and McSweyn Shattuck, and Ruth Tyson's sister, Kathryn McSweyn Smallwood, to recover certain bank stock, bank accounts, and certificates of deposit owned by Ruth Tyson at the time of her death. Ruth Tyson was the plaintiff's stepmother and adoptive mother whose last will and testament was the subject of a previous action in state court. In that action, Cause No. 19,839 of the Chancery Court of Marshall County, Mississippi, plaintiff sued the defendants herein and other heirs of Ruth Tyson to impose a constructive trust upon

all real and personal property of the plaintiff's father, Robert Tyson, devised to Ruth Tyson and remaining in Ruth Tyson's possession at her death. The complaint in state court alleged that Robert Tyson devised his entire estate to Ruth Tyson in exchange for Ruth Tyson's oral promise that she would devise to the plaintiff all "real and personal property previously owned by [plaintiff's] father, Robert A. Tyson" and retained by Ruth Tyson. The complaint described the "Robert A. Tyson property upon which the constructive trust should be imposed."

Robert Tyson's will reads in part:

Well knowing that my beloved wife will adequately care for my daughter Harriet Tyson and make provisions for her, by this expression not creating any trust, charge, or other restraint, I give, devise and bequeath to my beloved wife, Ruth McSweyn Tyson all my property of every nature and wherever situated, to her own use for ever [sic] in fee simple.

Consistent with her alleged promise, Ruth Tyson's original will, executed contemporaneously with Robert Tyson's will, provided the following:

I give devise and bequeath all property which was devised and bequeathed to me by my beloved husband Robert A. Tyson to the daughter of the said Robert A. Tyson ... Harriet Tyson to her own use for ever [sic] in fee simple.

The same provision was included in a second will executed on July 30, 1954 to correct a defect in the attestation clause of Ruth Tyson's former will. On January 19, 1965, Ruth Tyson executed a third will devising the property of Robert Tyson to defendants Pathman and Shattuck as co-trustees. Under the trust the plaintiff and defendant Smallwood were to receive equal shares of the income derived from Robert Tyson's property. Upon the plaintiff's death, the trust would terminate and the trust corpus and accumulations thereon would vest in defendant Smallwood and Ruth Tyson's brother.

The state court made the following findings:

(1) Robert Tyson intended "for his daughter to receive all that was left of his estate after the demise of his wife."

(2) Ruth Tyson promised and agreed to carry out Robert Tyson's intention.

(3) In a letter dated July 19, 1973 to the plaintiff, Ruth Tyson reaffirmed her promise to Robert Tyson as follows, "... when your father made his will ... I told him, that all that I owned which I received from your father would go to you at the time of my death."

(4) Ruth Tyson received her husband's estate "in the form of a constructive trust, as Trustee, for the use and benefit of his daughter...."

(5) Ruth Tyson "inherited income producing assets."

(6) Ruth Tyson acquired from her husband "his entire estate to use, possess, enjoy and control, together with the power of disposition. That portion of her husband's estate remaining in her possession at the time of her death on October 24, 1983 passed by operation of law to Roberta Alexander Tyson [the plaintiff]. No part of the Robert A. Tyson properties, real or personal, belong to or are a part of the estate of Ruth McSweyn Tyson."

The parties stipulated to the real and personal property of Robert Tyson which was devised to Ruth Tyson and still owned by Ruth at the time of her death as follows:

(1) the real property described in the complaint;

(2) 630 shares of common stock in the Bank of Holly Springs; and

(3) personal property reflected in the Barzizza inventory, exclusive of items from the Smallwood estate.

The court held that the above-described property is subject to the constructive trust.

The issue in this action is whether the constructive trust reaches *income* and products of income from the property left by Robert Tyson to Ruth Tyson. Specifically, the plaintiff claims she is entitled to certain bank accounts allegedly established with income from Robert Tyson's estate and certificates of deposit and stock alleg-

edly acquired by Ruth Tyson with income from Robert Tyson's estate, to wit:

(1) savings accounts, checking accounts, and certificates of deposit titled "in name of Ruth M. Tyson or Kathryn M. Smallwood"; and

(2) 95.5 shares of common stock in the Bank of Holly Springs titled "in name of Mrs. Ruth M. Tyson, P.O.D. Mrs. Kathryn M. Smallwood."

The plaintiff did not know of the existence of the property in dispute at the time the state action was filed. In her affidavit, the plaintiff admits, however, that she learned of the bank accounts and certificates of deposit from her attorney while the action was pending. She further states that she did not learn of the stock until after entry of the judgment although her attorney "apparently learned of the stock during the pendency of No. 19,839," the state court action.

The state action was filed in February, 1984. The court issued its opinion on February 18, 1985 and its decree on March 6, 1985, which the parties did not appeal. In an affidavit, defendant Shattuck states that on July 11, 1984 his attorney furnished the plaintiff's attorney and accountant a copy of the federal estate tax return for Ruth Tyson's estate. Schedule B of the tax return reflects a certificate for 630 shares and a certificate for 95.5 shares in the Bank of Holly Springs. Schedule E reflects jointly owned savings accounts, checking accounts and two certificates of deposit totaling 91,563.41 in the names of Ruth Tyson or Kathryn Smallwood. The tax return was introduced as an exhibit at trial and the accountant who prepared the return described schedules B and E in his testimony. In addition, the plaintiff's attorney received a letter from the Bank of Holly Springs dated October 12, 1984 stating that the certificate for 630 shares originated in stock owned by Robert Tyson at his death. On or about November 2, 1984, the plaintiff filed an amended complaint to claim the 630 shares of common stock included in Robert Tyson's estate. At no time did the plaintiff seek title to the remaining shares or the jointly owned bank accounts and certificates of deposit. On December 5, 1984, during the trial, the parties stipulated to the specific property in Robert Tyson's estate that was devised to Ruth and still owned by Ruth at the time of her death.

On April 5, 1985, defendants Pathman and Shattuck filed a complaint in Cause No. 8508 of the Chancery Court of Marshall County, Mississippi, which was instituted for the probate of Robert Tyson's will. The complaint alleged that Ruth Tyson had no separate estate at the time of Robert Tyson's death and that the executors of Ruth Tyson's estate had the right to renounce Robert Tyson's will. The state court granted the plaintiff herein summary judgment, which the Mississippi Supreme Court affirmed on appeal. In this action, the defendants initially moved for summary judgment on their counterclaim alleging that the plaintiff forfeited her rights under Ruth Tyson's will by filing Cause No. 19,839. The defendants concede that there are few assets in Ruth Tyson's estate in light of the ruling in Cause No. 8508, and the parties agree that the forfeiture issue is moot. Thus, the defendants have withdrawn their motion on the counterclaim.

## II. Res Judicata

The plaintiff seeks to recover income and products of income from her father's estate under a constructive trust imposed by the state court. The issue raised in the motion for summary judgment is whether this action is barred by the state court ruling. This court must give the state court judgment the same preclusive effect as would be given under the Mississippi law on res judicata. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 61 (1984).

A claim is barred if it was actually litigated in a prior suit. *Golden v. Golden,* 151 So.2d 598 (Miss.1963) (action for the amount the plaintiff paid to discharge her ex-husband's notes involved the same relief requested in a prior divorce proceeding); *Asher v. Hart,* 55 So.2d 447 (Miss.1951) (consent decree holding the widow as sole beneficiary under a mutual will barred sub-

sequent litigation seeking to impose a constructive trust on the widow's assets at the time of her death). The court in *Golden* stated:

A final judgment on the merits ... is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action.

151 So.2d at 599. A cause of action that is part of an indivisible claim previously adjudicated merges into the prior judgment. *Duett v. Pine Manufacturing Co.*, 48 So. 2d 490, 495 (Miss.1950) (claim for actual value of timber and claim for statutory penalty are part of a single cause of action for improper cutting of trees).

The defendants contend that the issue in this action was actually litigated in the state court action and is therefore barred. The defendants assert that in stipulating to the property included in Robert Tyson's estate, the plaintiff conceded that she is not entitled to the property sought herein. The defendants further assert that the state court implicitly found that property not specified in its ruling was not subject to the constructive trust. The plaintiff argues that since the parties stipulated to the specific property being litigated, the issue as to other property was not before the court. The court finds that the issue of whether the constructive trust reaches the income and products of income from Robert Tyson's estate was not actually litigated in the state court action and thus does not fall under the bar theory. *Cf. Golden v. Golden*, 151 So.2d at 599–600 (where an issue is specifically raised, omission of any reference to that issue in the court's opinion constitutes an adjudication).

The court finds that the state court did adjudicate the following issues:

(1) whether Ruth Tyson received Robert Tyson's estate in return for her promise to leave the plaintiff the remainder of Robert Tyson's estate at Ruth Tyson's death;

(2) whether Ruth Tyson's breach of promise gave rise to a constructive trust on the property she promised to leave to the plaintiff; and

(3) whether the constructive trust should be imposed on the specific property agreed to by the parties.

In the alternative, the defendants assert that the plaintiff's claim for certain bank accounts, certificates of deposit, and stock is part of an indivisible claim which was adjudicated in state court. The plaintiff distinguishes the state court action to determine title to certain property from this action which is to recover *income* and *products of income* earned from that property. The plaintiff relies on a case involving an unlawful entry and detainer suit for rent and compensation for use and occupation and a prior suit to confirm title and possession. *Lion Oil Refining Co. v. Crystal Oil Co.*, 171 Miss. 36, 156 So. 593 (1934). In *Lion Oil Refining Co.*, the court found that the relief requested for unlawful entry and detainer could have been sought in the prior action but did not merge into the prior decree for title. *Id.* at 595. The court stated:

It is true, as said in *Hardy v. O'Pry* [102 Miss. 197], 59 So. 73, 75, that "those things which might have been litigated, as well as those things actually litigated, in the first suit are res judicata; but this means those things 'involved in the record of the former case, and which, being so involved, might have been litigated and decided,' etc. *Hubbard v. Flynt*, 58 Miss. 266." In the case of *Davis v. Davis* [65 Miss. 498], 4 So. 554, it was held that "a matter is not res judicata simply because it might have been, but was not, included in the adjudication of a case disposed of, if in fact it was not presented by the pleadings or necessarily involved therein"....

*Id.* The court finds that this action is not analogous to an action for rent in that the plaintiff seeks title to additional property under the constructive trust imposed by the state court.

This action is also distinguishable from cases involving actions for damages and prior suits for injunctive relief. *See Bush v. City of Laurel*, 105 So.2d 562 (Miss.1958)

(prior actions for confirmation of title and an injunction were not res judicata as to trespass action for damages). The court in *Bush* held that the award of damages was neither essential to the confirmation decree or injunction nor "embraced or involved in either of the prior suits." *Id.* at 565. The plaintiff herein does not seek damages.

The plaintiff cites cases involving claims arising out of the same contract that involve different theories of recovery or different evidence. *E.g., Rosso v. New York Life Insurance Co.,* 128 So. 343 (Miss.1930) (claim for death benefits under insurance policy was not res judicata to claim for disability benefits under the same policy). Since separate premiums were paid for death and disability benefits, the court in *Rosso* held that

> the policy constitutes two separate contracts, one of which does not depend upon the existence of the other.

128 So. at 347. The plaintiff argues that this action involves different evidence and issues pertaining to the source of the property in question.

■ The court finds that the plaintiff's theory of recovery herein is based upon the constructive trust imposed by the state court. The evidence pertains to property within that trust. The state court found that a constructive trust should be imposed on the property Ruth Tyson promised to leave to the plaintiff. The court further found that Ruth Tyson promised to leave to the plaintiff all property which she received under Robert Tyson's will and still owned at her death. The parties stipulated to the specific property involved and the court imposed a constructive trust thereon. Since the state court decided what underlying property was subject to the trust, this court finds that the plaintiff's claim to income and products of income allegedly earned from that property was necessarily involved in the previous action. Thus, it should have been litigated and decided in state court, thereby merging into the state court judgment.

The plaintiff asserts that she had no knowledge of the property in dispute at the time the state court action was filed. *See*

*Himel v. Continental Illinois National Bank and Trust Co.,* 596 F.2d 205 (7th Cir.1979). In *Himel,* the beneficiaries of a testamentary trust sued the trustee for mismanagement of the trust estate. In a prior suit brought by the beneficiaries, an investment provision of the trust was reformed. The court held that the action for mismanagement was not barred in the absence of a showing that the plaintiffs "knew or should have known" of the alleged misconduct at the time the first action was filed. *Id.* at 210. The plaintiff herein learned of the bank accounts and certificates of deposit during the state court action but claims that only her attorney knew of the bank stock before entry of judgment. In light of Ruth Tyson's federal estate tax return and the accountant's testimony, the plaintiff had actual knowledge of the stock during the previous action. The plaintiff knew of the bank accounts, certificates of deposit and the stock at the time the parties stipulated to the specific property which Ruth Tyson promised to leave to the plaintiff. The plaintiff amended the complaint upon learning of 630 shares of bank stock but at no time alleged any right to the remaining shares and other property in dispute herein. The court finds that with diligence the plaintiff's present claim could have been litigated in the first suit and that the plaintiff gives no substantial reason for failing to do so. *See Brachett v. Universal Life Insurance Co.,* 519 F.2d 1072, 1073 (5th Cir.1975). Accordingly, the plaintiff is not entitled to maintain this action.

In addition to the reasons mentioned above, to allow subsequent suits of this type to recover products of income from the property left by Robert Tyson to Ruth Tyson could go on indefinitely. More likely than not, the personal belongings of Ruth Tyson, including her clothes, motor vehicles, household accessories, and other personal articles were products of income she received from her husband's estate, none of which were mentioned in the first action or in the present action. It is obvious that the plaintiff in her suit to enforce the promise of Ruth Tyson, was interested only in the property left by Robert to Ruth

which Ruth still possessed at her death— not the proceeds of that property—and that the present action is based on a theory thought of only after the initial suit was resolved.

It appears doubtful to the court that the plaintiff's present theory of recovery would have been successful even if it had been presented in state court, but to come into another court later and seek to expand on the property covered by the original agreement, and adjudicated by the first court, is analogous to closing the barn door after the horses have intentionally been let out.

### III. Collateral Estoppel

Since the court finds that the issue of whether the constructive trust reaches income and products of income was not actually litigated in state court, the doctrine of collateral estoppel does not apply. *See Dunaway v. W.H. Hopper & Associates, Inc.*, 422 So.2d 749 (Miss.1982) ("collateral estoppel applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated").

### IV. Rule 11 Sanctions

In their rebuttal memorandum, the defendants submit that Rule 11 sanctions should be imposed upon the plaintiff. However, their motion for summary judgment does not request sanctions. The plaintiff moved to dismiss the defendants' claim for sanctions with an accompanying memorandum. The defendants did not respond. The defendants assert that sanctions should be imposed if the court finds that under the terms of the constructive trust the plaintiff obviously is not entitled to the relief sought. In granting the summary judgment on the ground of res judicata, the court makes no finding as to the merits of this action. Upon due consideration, the court finds that the plaintiff's motion is well taken and should be granted.

### V. Conclusion

The court finds that there is no genuine issue as to any material fact and that the defendants are entitled to summary judgment on the plaintiff's claim. The plaintiff's motion to dismiss the defendants' claim for sanctions will be granted. The counterclaim is moot and will therefore be dismissed.

An order will issue accordingly.