**FORTY–EIGHT INSULATIONS, INC., Plaintiff,**

v.

**AETNA CASUALTY & SURETY CO., et al., Defendants.**

**Bankruptcy No. 85 B 5061.
No. 87 C 10594.
Adv. No. 87 A 1007.**

United States District Court, N.D. Illinois, E.D.

Nov. 16, 1993.

William C. Murphy, Murphy, Hupp, Foote, Mielke & Kinnally, Aurora, IL, Marcia Cotler, Steven R. Gilford, Mayer, Brown & Platt, Terry J. Malik, Michael P. O'Neil, Brian A. Loftus, Winston & Strawn, Chicago, IL, for Forty–Eight Insulations, Inc.

Thomas M. Crisham, Fritz K. Huszagh, Thomas C. Hofbauer, Hinshaw & Culbertson, Chicago, IL, for Aetna Cas. & Sur. Co. and Argonaut Ins. Co. and UAP.

Terrence E. Kiwala, Geoffrey A. Bryce, Rooks, Pitts & Poust, Chicago, IL, Teresa Plotkin, William J. Bowman, Hogan & Hartson, Washington, DC, for Hartford Ins. Group and First State Ins. Co.

Stanley B. Block, Paul Parker, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Continental Ins. Co. and Harbor Ins. Co.

Robert J. Bates, Jr., Matthew J. Gehringer, John E. Rodewald, Phelan, Pope & John,

Chicago, IL, for Affiliated FM Ins. Co., American Re–Insurance Co. and Highlands Ins. Co.

Virginia M. Vermillion, Nancy J. Gleason, Philip J. McGuire, Gleason, McGuire & Shreffler, Chicago, IL, for Allstate Ins. Co., as Successor in Interest to Northbrook Excess and Surplus Ins. Co., formerly known as Northbrook Ins. Co., American Home Assur. Co., and Granite State Ins. Co.

Patrick Maloney, Judith Fournie Helms, Robert R. Anderson, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Lumbermens Mut. Cas. Co.

James J. Hickey, Michael J. Merlo, Michael E. Bruton, Merlo, Chapello & Douglas, Ltd., Chicago, IL, for Prudential Re–Insurance Co.

Katherine E. Rakowsky, Philip C. Stahl, Eric D. Brandfonbrenner, Grippo & Elden, Chicago, IL, for Fireman's Fund Ins. Co.

Willis R. Tribler, Dion J. Sartorio, Tribler & Orpett, P.C., Chicago, IL, for Bellefonte Underwriters Ins. Co.

Richard R. Ryan, Michael D. Hultquist, McCullough, Campbell & Lane, Chicago, IL, for Federal Ins. Co.

Stephen Sonderby, Haskell & Perrin, Chicago, IL, for International Surplus Lines Co.

David C. McLauchlan, Robert P. Conlon, Lord, Bissell & Brook, Chicago, IL, for London Market Companies and North River Ins. Co.

J. William Cuncannan, Sarah M. Stegemoeller, Defrees & Fiske, Chicago, IL, Committee of Asbestos–Related Plaintiffs.

Kevin M. Forde, Mary Ann Mason, Kevin M. Forde, Ltd., Chicago, IL, for Unknown Putative Asbestos–Related Claimants.

Thomas B. Keegan, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Employers Mut. Cas. Co.

Lisa Marco Kouba, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Central Nat. Ins. Co. of Omaha.

Robert J. Spinazzola, Jobin & Flynn, Chicago, IL, for the Travelers.

Jerry L. McDowell, Elizabeth M. Budzinski, Gregory G. Smith, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL, for Taisho Marine and Fire Ins. Co., Ltd. of Tokyo, Japan.

Norman J. Barry, Christopher G. Walsh, Jr., Mary T. Megan, Joseph Della Maria, Rothschild, Barry & Myers, Chicago, IL, Jerald Oshinsky, Anderson, Kill, Olick & Oshinsky, Washington, DC, for Foster Wheeler Corporation and York Jersey Liability, Ltd.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

This is an action by Defendants Aetna Casualty & Surety Co., et al. (the "Insurers"),[1] against Plaintiff Forty–Eight Insulations, Inc. ("Forty–Eight") to estop Forty–Eight from relitigating the issue of which trigger of coverage theory this Court should adopt. In 1980, Forty–Eight prevailed in a declaratory judgment action in the Sixth Circuit by advocating an "exposure" theory of recovery for asbestos litigation. Forty–Eight has presently filed a Fifth Amended Complaint, in which it now argues for a "triple trigger" theory of coverage against the Defendant Insurers. The Insurers argue that because Forty–Eight prevailed on the merits of the "exposure" theory in earlier litigation, it is now judicially estopped from presenting a different theory of coverage in the present lawsuit. Forty–Eight contends that the doctrine of judicial estoppel is inapplicable to this action and that it should not be estopped from relitigating the trigger of

---

1. The following insurance companies have consolidated their arguments in regard to this motion: Prudential Reinsurance Co., Fireman's Fund Ins. Co., Aetna Casualty & Surety Co., Argonaut Ins. Co., U.A.P., Continental Ins. Co., Harbor Ins. Co., Bellefonte Ins. Co., North River Ins. Co., London Market Defendants, Highlands Ins. Co., American Re–Insurance Co., Affiliated FM Ins. Co., Employers Mutual Casualty Co., Taisho Marine & Fire Ins. Co., and Federal Ins. Co. In addition, the following insurance companies joined in this action after the original motion had been presented to this Court: International Surplus Lines Ins. Co., Hartford Ins. Group and First State Ins. Co.

coverage issue in this Court. For the reasons given below, we deny Defendant Insurer's motion to estop Forty–Eight from relitigating the issue of trigger of coverage and find that judicial estoppel does not apply to the present action.

## BACKGROUND

Forty–Eight is an Illinois corporation which manufactured and sold insulation products containing asbestos from approximately 1923 until 1970. In 1985, Forty–Eight sought the protection of the United States Bankruptcy Court for the Northern District of Illinois under Chapter 11 of the United States Bankruptcy Code. Because of Forty–Eight's bankruptcy, asbestos suits have not been filed against it since 1985. However, Forty–Eight has projected that 167,000 to 208,000 claims will be filed against it and that of those claims, approximately 78,000 to 97,000 involve exposure during the period from 1974 until 1978 to asbestos-containing products manufactured by Forty–Eight.

Defendant Foster–Wheeler corporation ("Foster Wheeler") is a New York corporation. In September 1973, Foster Wheeler acquired 100% of the stock of Forty–Eight, approximately three years after Forty–Eight ceased manufacturing products containing asbestos. On November 13, 1989, this Court ordered the joinder of Foster Wheeler in this action. The Defendant Insurers are insurance companies that provided primary and/or excess insurance to Foster Wheeler for at least some portion of the period from September 1973 to October 1978.

In 1980, Forty–Eight was a party in the case *Insurance Co. of North America v. Forty–Eight Insulations, Inc.*, 451 F.Supp. 1230 (E.D.Mich.1978), *aff'd* 633 F.2d 1212 (6th Cir. 1980) (the "*INA* case"). The other parties to the *INA* case were insurers which provided coverage to Forty–Eight from 1955 through the date of the lawsuit. None of the policies involved in the instant litigation were involved in the *INA* case.

As Plaintiffs moving for declaratory judgment, the Insurers sought to have the Court declare that the "manifestation theory" of liability should be applied to asbestosis cases. In response, Forty–Eight sought a theory which afforded more coverage for asbestosis claimants and so they opted for the "exposure theory" of liability. The Sixth Circuit described Forty–Eight's exposure theory argument as follows:

> Under this theory . . . all insurance companies which provided coverage from the time of the worker's initial exposure to time of the manifestation of the disease are jointly and severally liable to defend and to indemnify Forty–Eight if liability is found.

633 F.2d at 1217.

On May 4, 1978, the district court in *INA* issued a decision in Forty–Eight's favor. The trial court stated that "[i]f the manifestation theory is adopted, Forty–Eight would be effectively deprived of coverage it paid for and might be unable to secure coverage in the future where manifestation occurs after coverage is not available." 451 F.Supp. at 1240.

INA appealed the district court's decision to the Court of Appeals for the Sixth Circuit. In its reply brief to the Sixth Circuit, Forty–Eight argued that "the adoption of the exposure theory means coverage; adoption of the manifestation theory means no coverage. It's as simple as that." 6th Cir. Reply Br. at 26. The Sixth Circuit affirmed the district court's decision adopting the "exposure" theory of coverage. 633 F.2d at 1217–23. The Sixth Circuit noted that a "manifestation rule would deny coverage to the insured." *Id.* at 1220.

In its Fifth Amended Complaint in the instant case, Forty–Eight alleges that it is entitled to coverage under the Foster Wheeler insurance policies at issue pursuant to a "triple trigger" theory of coverage. This theory includes coverage for any "asbestos claimant whose exposure to Forty–Eight asbestos products, manifestation of asbestos related disease, or any period of exposure in residence between exposure and manifestation occurs within the Defendant Insurers' respective policy periods." Fifth Amended Complaint at para. 13.

## DISCUSSION

### The Doctrine of Judicial Estoppel [2]

 The central idea of the judicial estoppel doctrine is that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Id. citing Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). "The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1547 (7th Cir.1990). "The offense is not taking inconsistent positions as much as it is winning, twice, on the basis of incompatible positions." *Id.* at 1548. One limitation placed upon this doctrine by the Seventh Circuit is that "the facts at issue should be the same in both cases." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.1992).

The Seventh Circuit has limited the doctrine of judicial estoppel to instances in which "a clearly inconsistent position" from the earlier litigation is taken. *Levinson*, 969 F.2d at 264; *Himel v. Continental Illinois Nat. Bank & Trust Co.*, 596 F.2d 205, 210–11 (7th Cir.1979); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990). Judicial estoppel must be "applied with caution to avoid impinging upon the truthseeking function of the court." *Levinson*, 969 F.2d at 265 *citing Teledyne*, 911 F.2d 1214, 1218 (6th Cir.1990). Otherwise, the doctrine would preclude a contradictory position without examining the truth of either that statement or the original one. *Teledyne*, 911 F.2d at 1218. Therefore, the judicial estoppel doctrine requires prior judicial acceptance of a completely inconsistent statement before it can be implemented. *Id.*

The Seventh Circuit has employed this limitation by allowing estoppel in situations where the party has advocated a clearly inconsistent factual position. *See, e.g., Continental Illinois Corp. v. Commissioner*, 998 F.2d 513, 518 (7th Cir.1993); *Kale v. Obu-*

*chowski*, 985 F.2d 360, 361 (7th Cir.1993). The Circuit, however, has not applied estoppel in situations where two asserted claims could mutually coexist and do not directly contradict or exclude each other. *Himel v. Continental Illinois Nat. Bank and Trust Co.*, 596 F.2d 205, 211 (7th Cir.1979).

The Seventh Circuit has also expanded the application of the doctrine of judicial estoppel to not only inconsistent positions of fact, but of law also. *Cassidy*, 892 F.2d at 642. As the Seventh Circuit noted in *Cassidy:* "We think that the change of position on the legal question is every bit as harmful to the administration of justice as a change on an issue of fact." *Id.*

 It is important to note that judicial estoppel is a doctrine intended to prevent the perversion of the judicial process. *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990) *citing Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir.1982). The doctrine is used to prevent litigants from "playing fast and loose with the courts" by asserting inconsistent positions in different suits in order to gain the upper hand. *Id. citing Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953). The doctrine of judicial estoppel is intended to protect the integrity of the courts rather than the litigants. *Id.* It protects the courts by preventing a party from abusing the judicial process through "cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. National Labor Relations Bd.*, 911 F.2d 1214, 1218 (6th Cir.1990).

Generally, courts that have employed the judicial estoppel doctrine have couched their holdings in chastising language. In fact, the Seventh Circuit in *Levinson* stated that the doctrine "cannot apply without some decision or admission as to whether a party actually engaged in alleged misconduct." *Levinson*, 969 F.2d at 265. Likewise, courts which refuse to employ the doctrine recognize the

---

2. The parties have agreed not to litigate the choice of law applicable to the judicial estoppel doctrine in this case. Because the instant litigation involves the federal courts, we choose to use federal law to define the legal ramifications of the doctrine. Even if state law were used, however, it would not make much difference because the ideas underlying the doctrine of judicial estoppel are relatively straightforward and undisputed among the different jurisdictions.

lack of bad faith in the twice-prevailing party. *See, e.g., Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 716 (9th Cir.1990).

■ Because judicial estoppel rests upon principles of equity and the integrity of the judicial process, its application is within the court's sound discretion. *Cassidy,* 892 F.2d at 642. With these principles in mind, we now turn to the motion before us.

### Applicability of Judicial Estoppel to Forty–Eight

■ As stated above, the Seventh Circuit has imposed three limitations on asserting a judicial estoppel argument: (1) the facts of both cases must be the same; *Levinson,* 969 F.2d at 264; (2) the arguments must be clearly inconsistent; *Astor,* 910 F.2d at 1547; and (3) some type of bad faith or at least "cynical gamesmanship" must be shown. *Teledyne,* 911 F.2d at 1218.

■ First, the facts of the present case and the *INA* case are different. The two cases involve different defendant-insurers[3] as well as different coverage periods and policies. Whereas the *INA* litigation involved insurers with coverage periods between 1955 and the time of the *INA* lawsuit, the instant case only deals with those insurers who covered Forty–Eight from 1973 until 1978. In addition, none of the policies involved in the instant litigation were involved in the *INA* case. Response of Forty–Eight to the Insurers' Statement of Uncontested Facts, at p. 4, para. 11. Thus, the facts of the two cases are not similar, as is required by the doctrine of judicial estoppel.

Second, the two theories of coverage which Forty–Eight has advocated are not clearly inconsistent. Both the Sixth and Seventh Circuits have held that judicial estoppel must be "applied with caution to avoid impinging upon the truthseeking function of the court." *Teledyne,* 911 F.2d at 1218; *Levinson,* 969 F.2d at 265. If we choose not to adopt Forty–Eight's "triple trigger" theory of coverage simply because it might be inconsistent with an earlier argument, we will lose the benefit of being able to determine the merits of Forty–Eight's claim. For this reason, we must be absolutely certain that the two theories are entirely inconsistent in light of the disposition and facts of the two cases.

Forty–Eight is not arguing opposite claims here; it is only supplementing its original theory of coverage based upon an intervening change in the law. In order to better understand the arguments that the parties are making, we must set out some basic terms and definitions used in asbestos litigation. There exist three different "periods" of potential liability for asbestos claims: (1) the "exposure" period which covers the time of first exposure to asbestos fibers, (2) the "exposure in residence" period which consists of the time from the first exposure up to but not including the medical diagnosis of the disease, and (3) the "manifestation" period at which the disease has progressed to the point of being medically diagnosable. *See UNR Indus., Inc. v. Continental Ins. Co.,* 682 F.Supp. 1434 (N.D.Ill.1988). For judicial estoppel to be appropriate in this case, Forty–Eight would have had to argue an "exposure only" theory in the *INA* case while arguing a "manifestation only" theory in the present case so that the two claims would be mutually exclusive and entirely opposite.[4]

■ But that is not what is occurring here. In the *INA* case, Forty–Eight prevailed on an "exposure" theory of coverage. 633 F.2d at 1223. The Sixth Circuit's understanding of Forty–Eight's "exposure" theory[5] was that "all insurance companies which

---

3. Though some of the insurers in the two cases are identical, others are clearly different. For example, the Insurance Company of North America was a major insurer in the *INA* case but is not a named insurer in this action. The Insurers even admit that "they were not parties to the *INA* case." Response of Insurers to Forty–Eight's 12(n) Statement of Uncontested Facts, at p. 2, para. 2.

4. Since the "exposure only" theory does not contemplate the manifestation phase of the disease and the "manifestation only" theory does not include the exposure period, the two claims would necessarily contradict and exclude each other.

5. The Court refuses to accept the Insurers' suggestion that we must ignore the language of the Sixth Circuit's opinion in the *INA* case and look instead at Forty–Eight's briefs in that case to

provided coverage from the time of the worker's initial exposure to time of the manifestation of the disease are jointly and severally liable to defend and to indemnify Forty–Eight if liability is found." *Id.* at 1217. Thus, the Sixth Circuit's definition of the "exposure" theory, and the one on which Forty–Eight prevailed in that case, seems to have included both the initial period of "exposure" and the "exposure in residence" period which includes the time from initial exposure until the manifestation of the disease.[6] Forty–Eight's current "triple trigger" theory of coverage includes the "manifestation" period along with the "exposure" and "exposure in residence" periods upon which it had previously prevailed. Thus, the two claims are not opposite or clearly inconsistent since Forty–Eight is only adding on an additional period of coverage to the other two it already held, rather than completely *replacing* the exposure periods with one of manifestation.[7]

This case closely resembles that of *Himel*, in which the plaintiff's two positions were not inconsistent and in fact supplemented one another because both the investment clause and the bank's breach of a fiduciary duty could have been actual causes of the trust losing money. 596 F.2d at 211. In that case,

the Seventh Circuit held that the doctrine of judicial estoppel doctrine did not apply because the two asserted claims could mutually coexist, *Id.*, and here, too, in the instant case, the addition of a manifestation trigger to Forty–Eight's original exposure claim merely supplements its trigger theory rather than contradicting it and the judicial estoppel doctrine is inapplicable.

A significant factor in this litigation makes it even more clear that Forty–Eight has not argued clearly inconsistent claims. The *INA* case was a case of "first impression" for the Sixth Circuit, or any Circuit Court of Appeals for that matter, and the court was attempting to construe which theory of coverage the Illinois and New Jersey courts would potentially adopt in the future. 633 F.2d at 1222–23. Based upon the two choices before it, "exposure" or "manifestation," the court adopted the exposure theory because it maximized coverage, noting that "insurance policies must be strictly construed in favor of the insured and to promote coverage." 633 F.2d at 1221, 1223. The *INA* court was offered no other choice than to adopt the "exposure" theory on the basis that it could best maximize coverage.[8] Today,

---

establish Forty–Eight's prior position. The offense contemplated by judicial estoppel is "not taking inconsistent positions so much as it is *winning,* twice, on the basis of incompatible positions." *Astor,* 910 F.2d at 1548 (emphasis added). Forty–Eight prevailed on its "exposure" theory in the *INA* case based on the interpretation that the court in that case held was Forty–Eight's position. Thus, it is irrelevant what Forty–Eight argued in its briefs in that case when they won on the grounds expressed in the opinion itself. It is a much more consistent and reliable practice to look at the prior court's opinion itself rather than the briefs that led to its conclusion when applying the doctrine of judicial estoppel.

6. It is important to understand that even if Forty–Eight only prevailed on an "exposure only" theory which includes the initial period of exposure but not the "exposure in residence" period, this would not affect the outcome of our decision in this case. The point is that the "triple trigger" theory of coverage only supplements Forty–Eight's prevailing position in the *INA* case rather than directly contradicting it, as the judicial estoppel doctrine requires.

7. In their reply brief, the Insurers argue that Forty–Eight opposed the manifestation trigger in

*any* form as a "point of principle in the *INA* litigation" by asserting that manifestation was not consistent with the medical evidence and policy language. Thus, the Insurers contend, Forty–Eight may not now advocate the inclusion of a manifestation trigger in its coverage because it argued against such a trigger with such vehemence in the prior *INA* litigation. We do not accept the Insurer's characterization of Forty–Eight's argument in the *INA* case as excluding the use of the "manifestation" period in any form as a matter of "principle." In fact, the principle upon which Forty–Eight based its argument was that the "exposure" theory was legally and morally correct because it is "adopted regardless of the financial consequences to the insurer." 6th Cir. Reply Br. at 5. It is difficult to see why Forty–Eight would have rejected the use of manifestation as an additional supplement to policy liability as a "point of principle" when Forty–Eight's principled argument all along has been to choose the trigger theory which provides the maximum coverage available under the policies.

8. We reject the Insurer's argument that "Forty–Eight had an opportunity to *make* the law in *INA,* and the law it chose to make was the 'exposure only' trigger," so that Forty–Eight can not now avail itself of an intervening change in the law.

however, the legal environment has changed dramatically as the "triple trigger" theory of coverage has become widely accepted by both state and federal courts for its ability to maximize coverage more than either the exposure or manifestation theories alone. *See, e.g., Owens–Ill., Inc. v. United Ins. Co.,* 264 N.J.Super. 460, 625 A.2d 1, 25–26 (App.Div. 1993); *Zurich Ins. Co. v. Raymark Indus., Inc.,* 118 Ill.2d 23, 112 Ill.Dec. 684, 695, 514 N.E.2d 150, 161 (1987); *Keene Corp. v. Ins. Co. of North Am.,* 667 F.2d 1034, 1047 (D.C.Cir.1981).

In keeping with the policy reasons of the *INA* court to maximize coverage, and the policy which dictates that disputes in insurance contracts should be resolved in favor of finding coverage, *American Standard Ins. Co. v. Allstate Ins. Co.,* 210 Ill.App.3d 443, 155 Ill.Dec. 162, 569 N.E.2d 162 (1991), the adoption of a "triple trigger" coverage is only a logical extension of that court's reasoning and not the "intentional self-contradiction" which the judicial estoppel doctrine contemplates. *Scarano,* 203 F.2d at 513.

Under the circumstances noted above, we do not find that Forty–Eight is "playing fast and loose with the courts" or trying to "obtain an unfair advantage" by presenting two clearly inconsistent claims in successive suits. *Id.* Rather, Forty–Eight is merely attempting to restructure its previously uninformed legal claim with an intervening change in the law that comports with the same policy reasons upon which Forty–Eight prevailed in the *INA* case. As it is in this Court's sound discretion to determine whether our integrity has been harmed by such an action, we hold that Forty–Eight's claim for "triple trigger" coverage is valid and not barred by the doctrine of judicial estoppel.

*CONCLUSION*

For the foregoing reasons, we deny the Insurers' motion to estop Forty–Eight from relitigating the issue of trigger of coverage and hold that Forty–Eight is not barred by the doctrine of judicial estoppel in this action.

Certain Insurers' Reply Memorandum, at p. 11. At the time of the *INA* case, asserting the expansive "triple trigger" theory of coverage would have entailed a great risk on Forty–Eight's part as compared to the more conservative theory of "exposure." Because no Circuit Court of Appeals had ever ruled on the appropriate theory of coverage to be used, we refuse to say that in such a legal atmosphere, Forty–Eight was required to assert such an expansive theory of recovery when it knew that it had a greater chance of prevailing with the more conservative "exposure only" theory. If parties were forced to assert high risk claims in an uncertain legal environment for fear that they may be judicially estopped from later asserting such claims, this policy would harm the interests of clients who deserve to recover some damage award and want to be conservative in their litigation. It must also be remembered that Forty–Eight is not making a completely opposite claim from that which it made in the *INA* case, but is only adding on to its prior theory of recovery.