In re VICTORIAN PARK ASSOCIATES an Illinois limited partnership, Debtor.

Bankruptcy No. 92 B 25140.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 15, 1995.

Deborah V. Weisler, Douglas S. Draper, Draper & Culpepper, New Orleans, Louisiana, for Victorian Park Associates.

Philip V. Martino, Janice L. Durban, Rudnick & Wolfe, Chicago, Illinois, Diane Graham, Office of the U.S. Trustee, Chicago,

148

Illinois, Christopher D. Oakes, Shefsky & Froelich, Ltd., Chicago, Illinois, Norman J. Ginsparg, Sugar, Friedberg & Felsenthal, Chicago, Illinois, Allen H. Meyer, Chicago, Illinois, Loftus & Loftus, Park Ridge, Illinois, Peter Peterson, The M.F.I. Companies, Atlanta, Georgia, Donald A. Tarkington, Novack and Macey, Chicago, Illinois, Robert Berkover, Chicago, Illinois, Harold E. Nelson, Clary, Nantz, Wood, Hoffius & Cooper, Grand Rapids, MI, David B. Earl, Jennings, Strouss & Salmon, P.L.C., Phoenix, AZ, for The Patrician Mortgage Company.

## AMENDED MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

### Introduction

This case presents an unusual problem involving the post-confirmation rights of parties to a chapter 11 plan of reorganization. The plan was confirmed, but never "substantially consummated." The Debtor now wants to proceed to confirm a modified plan. The secured creditor, Patrician Mortgage Company, has, however, filed numerous objections to the modified plan. Patrician contends that three of its objections can be decided as a matter of law. Accordingly, Patrician filed a motion for summary judgment on the grounds that the Debtor is judicially estopped from changing its position as to the value of the property that is the sole asset of the Debtor, that the Debtor cannot apply post-confirmation payments to reduce the value of Patrician's pre-petition claim and that the modified plan fails to properly classify Patrician's unsecured deficiency claim. The motion will be granted on the latter two grounds.

### Facts

Patrician Mortgage Company holds a first mortgage on the Debtor's sole asset, an apartment complex in Streamwood, Illinois ("Property"). This case was filed on November 12, 1992, shortly after Patrician filed a suit to foreclose its mortgage on the Property. On February 8, 1993, Patrician filed a secured proof of claim for $17,282,423.89, plus post-petition interest, costs, expenses and pre- and post- petition attorneys' fees. After a confirmation hearing on January 10, 1994, this Court confirmed the Debtor's Third Amended Plan of Reorganization ("Confirmed Plan") on February 17, 1994. Under the terms of the Confirmed Plan, Patrician was allowed a fully secured claim of $17 to $18 Million (the exact amount to be determined by application of a formula). Patrician's loan was to be restructured by selling government-insured mortgage-backed securities at a rate up to 7.25%. Without going into the reasons why (which is disputed by the parties), the securities were never sold and the new funds were not raised. The Debtor, however, made payments to Patrician after confirmation totaling about $2.5 Million. On February 21, 1995, this Court determined that the Confirmed Plan had not been "substantially consummated" and allowed the Debtor to file and seek confirmation of a "modified" plan. 11 U.S.C §§ 1101(2), 1127(b).[1]

The Debtor is now pursuing confirmation of its Sixth Plan. Under the Sixth Plan, post-petition payments to Patrician will be applied to reduce Patrician's pre-petition claim to approximately $14 million. The secured claim will then be amortized over 25 years at a rate of 10.5% "or the rate fixed by this court which will provide to Patrician a stream of payments under the plan equal to 100% of their allowed secured claim." A balloon payment will be made on the tenth anniversary of the Effective Date. The Debtor contends that because the below market financing provided for in the Confirmed Plan is no longer available, the current value of the Property is between $13–$15 million. The Debtor believes that Patrician's allowed secured claim can be paid in full from the cash flow from the Property. Because the Sixth Plan is premised upon the value of the

---

1. Section 1127(b) provides: "The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title."

Property being in excess of Patrician's claim, the Debtor has not provided for an unsecured deficiency claim. To the extent Patrician has an unsecured deficiency claim it would be included in Class 20—unsecured claims over $100. The Sixth Plan proposes to pay 100% of allowed unsecured claims with interest at 9%, based upon a 30 year amortization and a balloon payment on the tenth anniversary of the Effective Date. The plan further provides that the Debtor's owners retain their equity interests.

Patrician's objections relate to its treatment as a secured creditor. It is necessary to know both the value of the Property and the amount of Patrician's secured claim to determine whether Patrician's claim has been properly treated under the Sixth Plan. Section 1129(b)(2)(A) requires that Patrician receive payments equaling the value of its collateral as of the effective date, *e.g.* that it be paid its secured claim in full. If Patrician is correct and the value of the Property and its claim remain at $17 to $18 Million, Patrician would be entitled to full payment of the greater amount up to the value of the property. 11 U.S.C. § 1129(b)(2)(A). The Sixth Plan, however, only provides for payment of an allowed secured claim in the neighborhood of $14 Million. On the other hand, if the value of the Property is what the Debtor claims, but Patrician's claim is greater than that amount, then Patrician would be entitled to have the deficiency treated and paid as an unsecured claim. 11 U.S.C. § 506(a). Section 1129(b)(2)(B) then requires that unsecured deficiency claim to be paid in full if any junior interest (such as the equity-holders) will receive or retain an interest. The Sixth Plan does provide for full payment of unsecured claims, but it does not specifically provide for a deficiency claim.

Patrician filed numerous objections to the Sixth Plan. Patrician has now moved for summary judgment on three grounds.[2] Patrician argues that the Debtor is judicially estopped from changing the value of the Property in the Sixth Plan to $13 million when the value was determined to be up to $22 million in the Confirmed Plan. Second, Patrician argues that post-confirmation payments cannot be deducted from Patrician's total pre-petition claim. Finally, Patrician contends that, if it has an unsecured deficiency claim, the Sixth Plan fails to properly classify it.

### *Arguments in Support of Summary Judgment*

A. *Judicial Estoppel Regarding Fair Market Value of the Property.*

■ At the January 10, 1994 confirmation hearing, one of the Debtor's general partners, Edward F. Havlik, testified as an expert on the value of the Property. Mr Havlik testified that the Property had a value "in excess of $17 million, and I believe closer to 21 or $22 million." Based upon this testimony, Patrician's claim was treated as fully secured. Patrician now contends that the Debtor should be judicially estopped from applying a different value in the Sixth Plan. In the Sixth Plan, the Debtor asserts that the Property is only worth $13–$15 million.

■ The doctrine of judicial estoppel prohibits a party from assuming a contrary position in a legal proceeding simply because that party's interests have changed. *Forty–Eight Insulations, Inc. v. Aetna Casualty & Surety Co.*, 162 B.R. 143 (N.D.Ill.1993). "The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." *Id.* at 147. The doctrine is intended to protect the integrity of the courts, not the litigants. *Id.* Because the doctrine is equitable in nature, its application is within the court's discretion.

Under Patrician's theory of judicial estoppel the value of the Property would forever be set at $21 million, whether the confirmation of the Sixth Plan was scheduled two

---

2. In its Motion for Partial Summary Judgment, Patrician initially raised five issues, two of which related to classification and treatment of property taxes. In its Response, the Debtor submitted the Cook County Treasurer's agreement to the Debtor's proposed treatment. Patrician has withdrawn its contentions related to treatment of property taxes (parts D and E of the motion) in light of the proposed agreement. This also renders the Debtor's motion to strike Patrician's objections to the treatment of tax claims for lack of standing as moot. Patrician reserves its objections on these issues in the event the agreement is not consummated.

years after the original confirmation hearing or ten years. This position is ridiculous since a key variable affecting the value of real property is time. As two courts have recognized, "general statements of the law on judicial estoppel, while supported by logic and by respectable authorities ... have no relevance and applicability to valuation of property in a case under Title 11." *In re Kelley*, 163 B.R. 27, 34 (Bankr.E.D.N.Y 1993), *quoting, In re Woolley's Parkway Center, Inc.*, 147 B.R. 996, 1001 (Bankr.M.D.Fla.1992).[3] This Court concludes that there is no basis for applying judicial estoppel in this case.[4]

### B. *Application of Payments Made After Entry of the 1994 Confirmation Order.*

■ The Sixth Plan depends upon the Debtor being able to apply post-confirmation payments to reduce Patrician's secured claim to $13,042,988.755 and Patrician having no unsecured deficiency claim.[5] This claim amount is arrived at by reducing the amount of Patrician's claim as of the Petition Date ($17.2 Million) by (1) post-petition, pre-confirmation payments ($2.1 Million), and (2) post-confirmation payments ($2.5 Million). Patrician argues that the Debtor cannot apply the post-confirmation payments to reduce Patrician's pre-petition claim. Rather, Patrician contends that even if it is under secured, § 506 does not preclude Patrician from accruing interest on its under secured claim after confirmation.[6]

Not surprisingly, neither party has cited any authority on application of post-confirmation payments under a modified plan since in most cases where post-confirmation payments have been made, the plan was ruled to have been "substantially consummated" and thus not subject to modification. 11 U.S.C. § 1127(b). In order to determine how such payments should be applied, it is therefore necessary to analyze the Bankruptcy Code sections dealing with the effect of confirmation.

■ Section 1141 governs the effect of confirmation. It provides in relevant part:

(a) ... the provisions of a confirmed plan bind the debtor, ... and any creditor, ... or general partner in the debtor.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided ... in the plan or the order confirming the plan, after confirmation of the plan, the property dealt with by the plan is free and clear of all claims and interests of creditors.

(d)(1) Except as otherwise provided in ... the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation.

Under § 1141, upon confirmation of a plan, the bankruptcy estate ceases to exist and all

---

**3.** There is, however, one situation where judicial estoppel might be applicable to valuation of property in bankruptcy that is illustrated by *In re J.F.K. Acquisitions Group*, 166 B.R. 207 (Bankr. E.D.N.Y.1994). In *J.F.K. Acquisitions* there was a hearing on a secured creditor's motion to lift the automatic stay; the parties disputed the value of the property. The debtor introduced expert testimony that as of April 26, 1992, the property was worth $30 million. The court made an express finding of fact that as of that date the property had a value of approximately $21 million. Ten months later on a hearing to fix the value of the secured creditor's claim, the debtor argued that the prior appraisal was incorrect and that the property should have been valued as of April 26, 1992 at $10 million. Obviously, application of judicial estoppel is warranted where a party argues that an earlier valuation was wrong, rather than that the value of the property has changed over time.

**4.** There is another reason to reject this argument. In *Forty–Eight Insulations* the district court noted that there are three requirements to apply judicial estoppel, including "some type of bad faith or at least 'cynical gamesmanship.'" *Id.* at 148. There is no showing of bad faith or cynical gamesmanship here.

**5.** Of course the scenario of Patrician being fully secured is further dependent upon the value of the Property being in the range of $13–$15 million as the Debtor alleges.

**6.** Under § 506(b) and *United Savings Associates of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) an under secured creditor is not entitled to post-petition interest; only over secured creditors are entitled to such interest.

property is revested in the debtor. *In re T.S.P. Industries, Inc.,* 117 B.R. 375, 377 (Bankr.N.D.Ill.1990). Although the related effects of confirmation are not expressly stated, it is clear that if all property is revested in the debtor and no estate remains to be administered, then the provisions in the Bankruptcy Code governing administration of a bankruptcy estate and the attendant rights and duties of creditors and debtors cease to govern. *Id.* at 377, *citing, In re W.R.M.J. Johnson Fruit Farm, Inc.,* 107 B.R. 18, 19 (Bankr.W.D.N.Y.1989) "('It is clear that upon confirmation of a plan of reorganization, property of the estate vests in the reorganized debtor . . . and the administration of the estate ceases.') *citing U.S. v. Redmond,* 36 B.R. 932, 934 (D.C.Kansas 1984); *In re Grinstead,* 75 B.R. 2, 3 (Bkrtcy. D.Minn.1985), ('The rights and the duties of creditors and the debtor are determined by the confirmed chapter 11 plan; there is no estate; and accordingly, no fiduciary,')."

Section 506 is part of Chapter 5 that deals with "Creditors, The Debtor, And The Estate." Because upon confirmation the estate ceased to exist, these provisions, and specifically § 506 no longer apply. Therefore, there is nothing in the Bankruptcy Code that precludes Patrician from accruing interest on its claim post-confirmation like any other creditor outside of bankruptcy, whether Patrician is under or over secured. The rights and relations between the Debtor and Patrician should then be treated just as any other lending situation (absent any contrary provision in the Confirmed Plan). *See In re Jartran, Inc. (Jartran II),* 886 F.2d 859, 869 (7th Cir.1989) ("Once a bankruptcy plan is effectuated, all indications from the Code would incline us to treat the reorganized entity as we would any other company.") Accordingly, this Court holds that the post-confirmation payments made to Patrician must first be applied to interest accruing on Patrician's claim post-confirmation, and only if a balance remains can such payments be applied to reduce Patrician's secured claim.

Patrician's claim is therefore significantly greater than assumed in the Sixth Plan. Assuming the valuation of the Property asserted by the Debtor, Patrician has a substantial unsecured deficiency claim. The next issue is the proper treatment of that claim.

C. *Classification of the Unsecured Deficiency Claim.*

■ Since the Debtor has improperly premised the Sixth Plan on its ability to apply the post-confirmation payments to reduce Patrician's claim to the alleged value of the Property, the Sixth Plan does not provide for an unsecured deficiency claim of Patrician.[7] Under the Sixth Plan any unsecured deficiency would therefore have to be included in the class of general unsecured claims in excess of $100 (Class 20). Patrician contends that such classification violates §§ 1129(a)(1) and 1122(a) and renders the Sixth Plan unconfirmable as a matter of law.

This issue was directly addressed and resolved by the Seventh Circuit in *In re Woodbrook Assoc.,* 19 F.3d 312, 319 (7th Cir.1994). In *Woodbrook* the court determined that an unsecured deficiency claim *must* be classified separately from general unsecured claims. The court determined that this result was required by the "[s]ignificant disparities . . . between the legal rights of the holder of a § 1111(b) claim and the holder of a general unsecured claim which render the two claims not substantially similar and which preclude the two from being classified together under § 1122(a)." The court concluded that the most significant disparity is created by the fact that the § 1111(b) claim exists only in a Chapter 11, because following conversion to a Chapter 7 the secured creditor is required to look only to the collateral, *e.g.* there is no unsecured deficiency claim. *Id.* at 318. There is nothing that factually distinguishes this case from *Woodbrook* and the Debtor has wisely not even attempted to make any distinctions.[8] Accordingly, Patrician is entitled to summary judgment on the issue of improper classification.

---

7. Patrician has not made an election under § 1111(b)(2) to be treated as fully secured.

8. Both *Woodbrook* and this case involved a debtor partnership with a fully encumbered single asset.

*Conclusion*

For the reasons set forth above, the Debtor is not permitted to apply the payments made to Patrician after confirmation to reduce Patrician's pre-petition claim, but instead must apply such payments to interest accruing on Patrician's claim after confirmation. The Sixth Plan also fails to separately classify any unsecured deficiency claim of Patrician. Because this violates §§ 1129(a)(1) and 1122, the Sixth Plan is unconfirmable as a matter of law.